[Cite as *State v. Hamm*, 2020-Ohio-4691.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190562 |
| | | TRIAL NO. 19-CRB17765B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| TRAVIS HAMM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Appellant Discharged

Date of Judgment Entry on Appeal:  September 30, 2020

*Paula Boggs Muething*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Heidi Rosales,* Senior Assistant City Solicitor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Travis Hamm appeals his conviction and sentence for aggravated menacing. We find that the conviction was not supported by legally sufficient evidence, and we reverse the judgment of the trial court and discharge Hamm.

## Evidence Presented at Trial

{¶2} Travis Hamm was charged with aggravated menacing in violation of R.C. 2505.02(A). He pled not guilty and proceeded to a bench trial.

### 1. Shazak Andrews's Testimony

{¶3} The city's first witness was Shazak Andrews. On July 12, 2019, he entered the United Dairy Farmers ("UDF") on Vine Street to withdraw money from the ATM machine. When he walked outside, a pickup truck was parked in front of the door. As Andrews walked past the passenger window of the truck, he and the driver looked at each other, and he heard the driver, Travis Hamm, say something to him. Andrews asked him what he had said, and Hamm remarked that he had pretty eyes. Andrews replied, "I don't know how to take that comment," and he continued to walk to his car. Hamm jumped out of his truck and told him that he should not have been staring at Hamm. He noticed that Hamm had a firearm holstered on his hip.

{¶4} More words were exchanged, and Andrews tried to call his mother-in-law, a 911 dispatcher, and then called his brother when he could not reach his mother-in-law. Andrews was mostly laughing and on his phone the entire time. Hamm retrieved his phone and began recording Andrews walking with his phone, his car, and his license plate. Hamm put the phone in his face while recording. Andrews did not call 911, but he did not feel it was safe to leave because Hamm had

his license plate number and a gun. Andrews hung up the phone and told Hamm that he was acting tough because he had a gun.

{¶5} Hamm then removed the gun and handed it to the passenger in his truck, his fiancée Francie Knott. Hamm approached Andrews, and Andrews punched him twice. Hamm fell to the ground. Hamm did not say anything to provoke the punches. Rather, Andrews punched him due to his own fear of not knowing what Hamm's intentions were because Hamm appeared to be angry and irate.

{¶6} After the second punch, Hamm retrieved his gun and chased Andrews around the UDF with the gun in his hand. Andrews believed that Hamm was going to shoot him. As Andrews rounded the front of the store, he saw Hamm in his truck arguing with Knott. Andrews ran into the store, and told the employees that Hamm had a gun. The employees locked the store and called the police.

2. The Video Evidence

{¶7} The state introduced three video clips from the UDF cameras. None of the cameras recorded any audio. The first video showed Hamm and Knott sitting in the truck. Knott was in the front passenger seat with her window open, and Hamm was in the driver's seat with his window open. Andrews left the UDF and walked past Hamm's truck. Andrews approached the passenger window and the two exchanged words through the window.

{¶8} The second video showed Hamm exiting from his truck and standing next to the truck's passenger window. Andrews, who was talking on the phone, walked to the back of Hamm's truck and stood by the license plate. Then Hamm retrieved his phone from the car and walked to the back of Andrews's car. The two

3

exchanged words again, and Hamm stood with both hands behind his back holding his cell phone. Andrews continued talking on the phone and walking next to the truck. Hamm returned to his truck while Andrews continued to walk next to the passenger side of the truck.

{¶9} Andrews approached the passenger window with papers in his hand, exchanged words with Knott, and continued walking by the truck. Hamm exited from the truck, climbed onto the bed of the truck, and sat down. More words were exchanged, and Hamm jumped down and stood by the passenger window.

{¶10} Hamm removed the holstered gun and placed it on Knott's lap. Andrews walked toward the truck, and when Hamm turned toward Andrews, Andrews lunged at him. Hamm was standing with his arms at his side with his right palm down and his left hand holding his cell phone. Andrews immediately assumed a fighting stance and punched Hamm in the face. Hamm stumbled, and Andrews went toward him and punched him again. Hamm fell to the ground. Knott stood up and leaned out of the truck window and exchanged words with Andrews, who had already moved away from the truck. Andrews ran after Hamm stood up and leaned into the passenger window of the truck. Hamm retrieved the holstered gun, clipped it onto his waistband, and pulled his shirt over the holster. He walked unsteadily in the same direction that Andrews had run. Seconds later, Hamm returned to his truck and sat down in the driver's seat. He remained in the truck until the police arrived.

{¶11} A third video, taken from a different angle, showed Andrews run across the parking lot. Andrews was at the side of the building when Hamm appeared on the video, walking on the sidewalk. Andrews disappeared behind the

UDF, and Hamm turned around and walked back toward his truck. Hamm's gun was holstered on his right hip, and his cell phone was in his right hand.

### 3. Officer Charles Utley's Testimony

**{¶12}** Officer Charles Utley responded to the UDF. When he arrived, Hamm and Knott were sitting in the truck. Utley directed them to exit, and Hamm had the holstered gun on his hip. Hamm was very upset and hostile. Hamm explained that he had the right to carry a firearm, and that he had removed his firearm, anticipating a fight with Andrews. He did not want Andrews to gain possession of the gun during the fight. After reviewing the UDF surveillance video, Utley charged Hamm with aggravated menacing. Utley decided not to file disorderly conduct charges against Andrews and Hamm for fighting because he believed that they both engaged in fighting.

**{¶13}** The state rested, and Hamm moved for an acquittal under Crim.R. 29. The trial court overruled the motion, and the defense called Francie Knott to testify on Hamm's behalf.

### 4. Francie Knott's Testimony

**{¶14}** Knott testified that Andrews became aggressive after Hamm's comment about his eyes. Hamm had told Andrews that he had pretty eyes, but that he preferred women. Andrews became aggressive, and additional words were exchanged, but she did not remember what was said. Andrews told Hamm to stay there, and then began making phone calls and walking around the truck. She felt threatened by Andrews.

**{¶15}** Hamm exited from the truck with the gun in the holster clipped to his waistband. Hamm had given her the gun before Andrews punched him. After

5

Andrews hit him the first time, Hamm stumbled. Hamm lost the cross on his necklace and was on the ground looking for it. When Andrew hit him the second time, he fell to the ground and scraped his elbow. Hamm then retrieved his gun and holstered it. Knott testified that Hamm did not follow Andrews. Hamm retrieved the holstered gun then returned to the truck. After her testimony, the defense rested and renewed its motion for an acquittal. The court overruled the motion.

### 5. The Factual Findings

{¶16} The court found Hamm guilty after making the following factual findings:

> Mr. Andrews felt threatened when Mr. Hamm came towards him, and
> rightfully so. He punched him twice to get him off of him and out of
> his face. Again, Mr. Hamm [had] no reason to be in Mr. Andrews' [sic]
> face. I saw clearly on the tape Mr. Hamm chase Mr. Andrews. He had
> a gun in his hand. Finding is guilty.

{¶17} The trial court sentenced Hamm to 180 days in jail, suspended 90 days, credited Hamm with 18 days served, and imposed one year of community control. The court remitted the fines and imposed court costs. The trial court also ordered Hamm to forfeit his gun and concealed carry permit. The court denied Hamm's request to stay the sentence pending appeal.

{¶18} In three assignments of error, Hamm argues that the conviction was not supported by legally sufficient evidence and was against the manifest weight of the evidence, the trial court exceeded its statutory authority by ordering the forfeiture of his firearm, and the trial court erred in ordering the forfeiture of his concealed carry weapons permit.

The Evidence was Insufficient to Support the Conviction

**{¶19}** In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** R.C. 2903.21(A), the aggravated-menacing statute, states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person * * *." R.C. 2903.21(A). Under R.C 2901.22(B), a person acts "knowingly," regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature; a person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶21}** The sole basis of the finding of guilt was the video recording that the trial court found "clearly" showed that Hamm chased Andrews with his gun in his hand. Those facts, if supported by the evidence, could be sufficient to prove that Hamm knowingly caused Andrews to believe that he would cause him serious physical harm.

**{¶22}** However, after a careful review of the video, we conclude that those factual findings were not supported by the evidence. The video revealed that Hamm clipped his holstered gun to his waistband immediately after retrieving it from the truck and that Andrews had begun running before Hamm had retrieved the holstered gun. Rather than showing a chase, the video showed that Andrews had already run to the side of the building when Hamm appeared on the sidewalk. Moreover,

Andrews's trial testimony established that Hamm did not verbally or physically threaten him. Hamm made no threats to cause a fear of serious physical harm.

{¶23} Although Andrews testified that he believed that Hamm may shoot him, that belief was not caused by Hamm's conduct. In reaching this conclusion, we are persuaded by the analysis in *State v. Fields*, 84 Ohio App.3d 423, 616 N.E.2d 1185 (12th Dist.1992). In *Fields*, an off-duty police officer discovered three boys fishing on private property. *Id.* at 428. Fields retrieved her firearm from her vehicle and ejected the boys for trespassing. *Id.* Although Fields initially waved her gun around, she held the gun at her side for the remainder of the encounter. *Id.* Fields was charged with and convicted of aggravated menacing. *Id.* at 425.

{¶24} On appeal, the Twelfth District Court of Appeals reversed Field's conviction for aggravated menacing, finding that "appellant made no threat which would cause a fear of serious physical harm." *Id.* at 428. The testimony established "that although appellant had a gun with her * * * she did not verbally threaten the boys or directly point the gun at them." *Id.* As a police officer, Fields was lawfully carrying a firearm and was entitled to evict the boys from the property. *Id.*

{¶25} Similarly, in this case, Hamm was lawfully carrying a firearm in a holster strapped to his hip. Hamm did not brandish the firearm, wave the firearm in the air, or threaten to use the firearm. Hamm "made no threat which would cause a fear of serious physical harm." *Id.* Therefore, the evidence was insufficient to prove that Hamm knowingly caused Andrews to believe he would inflict serious physical harm. We therefore sustain the first assignment of error. We find his second and third assignments of error are moot, and we decline to address them.

Conclusion

**{¶26}** We hold that the evidence was insufficient to support the trial court's finding that Hamm was guilty of aggravated menacing. We sustain the first assignment of error, reverse the trial court's judgment, and discharge Hamm from further prosecution.

Judgment reversed and appellant discharged.

**MOCK, P.J.** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry this date.