[Cite as *State v. Harris*, 2015-Ohio-5378.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 27639 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WAYNE L. HARRIS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2014 04 0929 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2015

HENSAL, Presiding Judge.

{¶1} Wayne Harris appeals his conviction in the Summit County Court of Common Pleas for obstructing official business and aggravated menacing. For the following reasons, this Court affirms.

I.

{¶2} According to Chad Keefer, he was on the deck of his building on the morning of March 24, 2014, when his dog began barking at Mr. Harris, who lived in the building next door. In response, Mr. Harris gave Mr. Keefer the middle finger. When Mr. Keefer asked Mr. Harris whether he had just "flicked [him] off," Mr. Harris did it again. After Mr. Keefer inquired further, Mr. Harris invited him to come down off of the deck to "deal with it like a man[.]" Mr. Keefer accepted the invitation, but when he approached Mr. Harris, Mr. Harris pulled out a revolver and asked him "[h]ow would you like to die today?" At that point Mr. Keefer retreated into his home, and his wife called 911.

{¶3} When deputies arrived, they spoke to Mr. Keefer briefly then attempted to locate Mr. Harris, who had gone inside his unit. According to Deputy Brian Breedan, he went to the building next to Mr. Keefer's and began knocking on the doors, attempting to find Mr. Harris. After he passed Mr. Harris's front door, Mr. Harris "came partially out" behind him and yelled "[w]hat do you want?" Deputy Breedan turned around, told Mr. Harris to place his hands on top of his head and "to step outside to talk" with him. Instead, Mr. Harris stated "fuck you" and "ran back into the residence." Deputy Breedan then heard sounds coming from inside the building that sounded like Mr. Harris was barricading the door. He, therefore, asked the dispatcher to call Mr. Harris's residence so that they could maintain communication with him. The dispatcher reached Mr. Harris and convinced him to go out onto his rear balcony to speak to other deputies. Once Deputy Breedan learned that Mr. Harris was on the rear balcony, he entered the front door and made his way through the unit, eventually reaching Mr. Harris and arresting him. After Mr. Harris's wife gave the deputies permission to search the unit, they found a loaded revolver under a mattress, which Mr. Keefer identified as the one Mr. Harris displayed to him.

{¶4} The Grand Jury indicted Mr. Harris for aggravated menacing and obstructing official business. A jury found him guilty of the offenses, and the trial court sentenced him to 15 months of community control. Mr. Harris has appealed, assigning as error that there was insufficient evidence to support his conviction for obstructing official business.

II.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE
TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING
APPELLANT'S CRIM.R. 29 MOTION.

{¶5}     Mr. Harris argues that the trial court should have granted his motion for acquittal because there was insufficient evidence to support a conviction of obstructing official business. Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6}     Revised Code Section 2921.31(A) provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Mr. Harris argues that there was no evidence that he did "any overt act to hamper any official investigation." He argues that merely retreating into his home and remaining within it does not constitute obstruction.

{¶7}     "An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 84 (9th Dist.1996). The "mere failure to obey a law enforcement officer's request may not amount to obstruction." *State v. Griffin*, 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26,

1999). For example, a person's refusal to produce his driver's license is not punishable conduct. *State v. McCrone*, 63 Ohio App.3d 831, 834-835 (9th Dist.1989). On the other hand, this Court has recognized that the "affirmative act of running from an officer" does impede an officer's lawful duty. *State v. Sanders*, 9th Dist. Summit No. 23504, 2007-Ohio-2898, ¶ 21. In addition, if an officer has the right to detain an individual, the individual cannot continue walking away from the officer once he is aware that the officer is trying to detain him. *State v. Davis*, 140 Ohio App.3d 751, 753 (1st Dist.2000).

{¶8} Viewing the evidence in a light most favorable to the prosecution, we conclude that Mr. Harris's retreat into his house after being ordered by Deputy Breedan to put his hands on top of his head and to talk with him constituted an overt act that was sufficient to support his conviction for obstructing official business. *See State v. LaPorte*, 4th Dist. Ross No. 14CA3450, 2015-Ohio-294, ¶ 28 ("We find Appellant's act of retreating from the officers to be an overt act which delayed them from performing official duties and hampered their investigation of a possible crime scene."); *State v. Williams*, 9th Dist. Summit No. 23176, 2007-Ohio-622, ¶ 28 (upholding conviction when defendant refused officer's order to show his hands and tucked them under his torso to avoid being handcuffed); *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, ¶ 24 (10th Dist.) (fleeing from an officer constitutes an affirmative act). Accordingly, we reject Mr. Harris's argument that there was insufficient evidence to convict him of obstructing official business.

{¶9} Mr. Harris also argues that, even if his retreat into his home could be considered an affirmative act, there was insufficient evidence to elevate his offense to a felony of the fifth degree. Obstructing official business is a misdemeanor of the second degree unless the violation

"creates a risk of physical harm to any person[,]" which is a felony of the fifth degree. R.C. 2921.31(B).

{¶10} Mr. Harris argues that his retreat into his home did not create a risk of physical harm to anyone. Deputy Breeden, however, disagreed. He testified that, in light of Mr. Keefer's report that Mr. Harris had a gun, Mr. Harris's retreat turned the matter into a potential hostage situation. From the sounds Deputy Breedan heard coming from inside, he was also concerned that Mr. Harris was preparing for a physical confrontation and that he might be creating a "fatal funnel" for any officers attempting to enter the residence.

{¶11} Because Mr. Harris retreated into his residence instead of talking with Deputy Breeden, the deputy felt compelled to enter the residence with his weapon drawn, presenting a risk of physical harm to the deputy and Mr. Harris's wife, who the deputy encountered while working his way through the home. *See State v. Allsup*, 3d Dist. Hardin No. 6-07-13, 2008-Ohio-159, ¶ 27 (explaining that, because of defendant's threats, officers had their weapons drawn while executing search warrant, creating a risk of physical harm to other occupants of the house); *State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27-28 (concluding that officers faced risk of physical harm when they were forced to pursue defendant and retrieve a loaded revolver). We have recognized that "the potential risk of injury to an officer in pursuit of a suspect need not be a large one in order to support a conviction for obstruction of official business." *Id*. at ¶ 27. Accordingly, upon review of the record, we conclude that there was sufficient evidence for the jury to find that Mr. Harris's offense was a felony of the fifth degree. Mr. Harris's assignment of error is overruled.

III.

**{¶12}** Mr. Harris's obstruction-of-official-business conviction is supported by sufficient evidence. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

ALAN M. MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.