[Cite as *State v. Moss*, 2018-Ohio-4747.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.  28986 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LAMAR MOSS | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  17CRB05801 |

DECISION AND JOURNAL ENTRY

Dated: November 28, 2018

TEODOSIO, Judge.

{¶1} Appellant, Lamar L. Moss, appeals from his obstructing official business conviction in Akron Municipal Court. This Court affirms.

I.

{¶2} Two Akron police officers observed a car with two people inside parked in the back parking lot of a closed bar at 3:50 A.M. in a high crime area. According to Officer Matthew Scherick, the officers suspected that criminal activity was either occurring or was about to occur, so they approached the vehicle. They suspected the couple was engaging in sexual activity because Mr. Moss was leaned all the way back in the driver's seat and the female passenger ("S.M.") was leaning over into the driver's seat. S.M.'s head popped up as the police approached, and the officers observed many furtive movements within the vehicle. When questioned, Mr. Moss became very defiant and very belligerent toward the officers. He was "jostling around" in his seat, refusing to provide his identification or to answer any questions,

repeatedly moving his hands down toward his waist and lower legs, yelling, and telling S.M. to not cooperate with the officers or give them any information. The officers decided to call their supervisor to the scene due to Mr. Moss' behavior and ultimately charged him with obstructing official business.

{¶3} Mr. Moss waived his right to a jury trial and the case proceeded to a bench trial. The trial court found him guilty and sentenced him to a $250.00 fine, court costs, 24 hours of community service, and 90 days of suspended jail-time. The sentence was held in abeyance pending appeal.

{¶4} Mr. Moss now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY FINDING THAT APPELLANT ACTED WITH THE PURPOSE TO DELAY AND IMPEDE THE POLICE INVESTIGATION AND BY FAILING TO GRANT APPELLANT'S CRIM.R. 29 REQUEST FOR A DIRECTED VERDICT.

{¶5} In his sole assignment of error, Mr. Moss argues that the trial court erred in finding that he acted with purpose to delay and impede a police investigation and erred in denying his Crim.R. 29 motion for acquittal. We disagree with both propositions.

{¶6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No.

27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶7} Mr. Moss was convicted of obstructing official business under Akron City Code 136.11(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." *Compare* R.C. 2921.31(A). Obstructing official business is a misdemeanor of the second degree. Akron City Code 136.11(B). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996). Law enforcement officers are considered public officials. *See* R.C. 2921.01(A).

{¶8} A review of the record reveals that the State presented evidence, if believed, that Mr. Moss committed the offense of obstructing official business. Officer Scherick testified at trial that, on June 18, 2017, around 3:50 A.M., he was working with his partner, Officer Ryan Smith, near Andy's Bar on South Main Street in Akron. Officer Scherick testified that this

particular location has been the site of numerous complaints for illegal activity, including drinking, drugs, and prostitution. An unsolved shooting recently occurred there as well. The officer testified that he has personally made several arrests in the back parking lot of Andy's Bar for drug and alcohol activity. While patrolling the area that night, the two officers observed a vehicle parked in the back parking lot of Andy's Bar with two people inside. The bar was closed at the time.

{¶9} According to Officer Scherick, the officers approached the parked vehicle and noticed "a lot of jostling around, movements of hands and bodies" within the vehicle. The officers observed Mr. Moss in the driver's seat, reclined all the way back into "almost a flat laying position." S.M. was sitting in the passenger seat, but she was leaning all the way over into the driver's seat, and it appeared that the couple was engaging in sexual activity. Officer Scherick testified that he believed criminal activity was either occurring or was about to occur. His testimony referenced several potential crimes including prostitution, public indecency, and trespass. He testified that S.M.'s head "popped back up" as the officers approached, and she sat back up in her own seat. It appeared to the officer that the couple was readjusting clothing and putting their pants back on while their hands were "being moved to possibly conceal any type of drugs or weapons or anything of concerning nature * * *." Officer Smith approached the driver's side of the vehicle and spoke to Mr. Moss while Officer Scherick approached the passenger's side and spoke to S.M.

{¶10} Officer Scherick testified that they asked for identification because it is police department policy for officers to identify who they are speaking to during any contact with civilians if a crime has been or may be committed, so the officers may radio back to dispatch with the information while "dealing with whatever [they are] dealing with * * *." The officers

wanted to identify the couple, explain their suspicion of possible illegal activity, explain that this is a dangerous area after hours, and ask the couple to simply leave the property, which Officer Scherick testified could have taken five minutes. Mr. Moss, however, stated that he and S.M. were not doing anything wrong, refused to answer or speak to the officers, and refused to provide any identification. While Officer Scherick was speaking exclusively to S.M., Mr. Moss was yelling at her to not talk to the officer and to not give him her information, which the officer testified impeded or delayed the process of obtaining S.M.'s information.

{¶11} According to Officer Scherick, S.M. eventually provided her name and date of birth, which led to her being released. Mr. Moss, on the other hand, kept moving his hands around toward his waist and his lower legs. Officer Smith told Mr. Moss to keep his hands visible at all times, but Mr. Moss kept refusing to listen and was "jostling around" in his seat, which alarmed Officer Scherick because he did not know if Mr. Moss had a weapon. Officer Scherick characterized Mr. Moss' behavior as "very defiant" and "very belligerent." He testified that Mr. Moss was ultimately arrested because:

> Given the totality of the circumstances, the location, the time, the numerous problems we've had at this location, Mr. Moss refusing to keep his hands still, refusing to identify himself in any way, and just the overall delay in us speaking to them, identifying them and having them leave the property, * * * the decision was made to place him under arrest for obstructing.

The officer further testified that Mr. Moss' behavior in yelling and telling S.M. to not answer any questions was a contributing factor in the decision to charge him with obstructing official business. Mr. Moss' behavior also prompted the officers to call their supervisor, Sergeant Steven Pro, to assist at the scene. The entire incident lasted approximately 40 minutes.

{¶12} An affirmative act is required to support a conviction for obstructing official business, and the mere failure to obey a police officer's request may not always amount to

obstruction. *See State v. Harris*, 9th Dist. Summit No. 27639, 2015-Ohio-5378, ¶ 7. For example, the refusal to produce a driver's license, without more, is not punishable conduct. *See id.*, citing *State v. McCrone*, 63 Ohio App.3d 831, 834-835 (9th Dist.1989). Mr. Moss argues that his failure to identify himself in this case was not an affirmative act sufficient to sustain a conviction for obstructing official business. However, a suspect may indeed obstruct official business when he creates a significant delay by ignoring an officer's repeated orders, thereby impeding the officer's ability to perform his lawful duties. *See State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27; *State v. Vintson*, 9th Dist. Lorain No. 06CA009066, 2007-Ohio-6141, ¶ 27. Rather than viewing the suspect's actions in isolation, the total course of his conduct must be considered. *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 Ohio App. LEXIS 3788, *4 (Aug. 18, 1999). Multiple affirmative acts that go beyond a single act of simply not producing identification—such as shouting and repeatedly answering police questions posed to a different individual, despite several warnings to refrain from such conduct—may constitute sufficient evidence to support a conviction for obstructing official business. *See Reichbaum*, 112 Ohio App.3d at 84.

{¶13} The evidence at trial established that the officers were lawfully investigating their reasonable suspicion that criminal activity was afoot at 3:50 A.M. in the back parking lot of a closed bar in a high crime area. Mr. Moss and S.M. were observed by officers possibly engaging in sexual activity, but the couple managed to compose themselves by the time the officers actually reached the vehicle. Although the officers explained their presence and their suspicions and asked for identification in accordance with police department policy, sufficient evidence was introduced to establish that Mr. Moss purposely committed several affirmative acts in a defiant and belligerent manner that, when considered in totality, hampered or impeded the officers in

their investigation and significantly delayed the duration of the incident. Mr. Moss was "jostling around," refusing to provide any identification or answer any questions, repeatedly moving his hands down toward his waist and lower legs, yelling, and telling S.M. to not cooperate with the officers. We disagree with Mr. Moss' contention that his actions that night should not be considered multiple affirmative acts, but instead a "repe[tition of] the same act over again." Despite repeated police warnings to cease his obstructive behavior, Mr. Moss continued in this course of conduct, which prompted the officers to call their supervisor for assistance at the scene. Although Officer Scherick testified that the entire incident could have been handled in five minutes, and the couple could have simply been sent on their way, Mr. Moss' actions caused a significant delay and extended the duration of the incident to approximately 40 minutes. We conclude that sufficient evidence existed that Mr. Moss acted with purpose to prevent, obstruct, or delay the officers in performing their lawful duties, which can be ascertained from the surrounding circumstances in this case.

{¶14} We therefore conclude, after viewing the evidence in a light most favorable to the prosecution, that the trier of fact could have reasonably found the elements of obstructing official business to be proved beyond a reasonable doubt. Furthermore, we conclude that the trial court did not err in denying Mr. Moss' Crim.R. 29 motion for acquittal.

{¶15} Accordingly, Mr. Moss' sole assignment of error is overruled.

III.

{¶16} Mr. Moss' sole assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.