[Cite as *State v. Zupancic*, 2021-Ohio-1448.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

TYLER ZUPANCIC

    Appellant

C.A. No.      20AP0007

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.      2019 CR-B 001583

DECISION AND JOURNAL ENTRY

Dated: April 26, 2021

TEODOSIO, Judge.

{¶1} Appellant, Tyler Zupancic, appeals from his conviction for obstructing official business in the Wayne County Municipal Court. This Court affirms.

I.

{¶2} Hotel staff at the Days Inn in Wooster as well as Wooster police were notified that Mr. Zupancic and his girlfriend ("M.S.") were causing disturbances in Room 113 and were the source of a strong odor of marijuana throughout the entire first floor of the hotel. Officer Jonathan Ruggerri knew Mr. Zupancic from past incidents and learned that he had an active warrant for his arrest. When he reached Room 113, the officer heard the voices of both a male and a female inside of the room and smelled an overwhelming odor of marijuana. Over the next couple of hours, staff and several officers spoke to M.S. through the closed door and tried to convince her to open it because they suspected Mr. Zupancic was inside. Sometimes she answered and sometimes she remained silent. After much stalling and being told she needed to leave the premises, M.S. finally

vacated the room. The officers again verbally announced their presence, identified themselves as the police, and called out for anyone in the room to reveal themselves. Upon receiving no response, the officers searched the room and ultimately found Mr. Zupancic hiding underneath a mattress and inside of one of the enclosed bedframes.

{¶3} Mr. Zupancic was arrested and charged with obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree. After a bench trial, the trial court found him guilty and sentenced him to 90 days in jail and a $500.00 fine. Mr. Zupancic's motion to stay the sentence was denied.

{¶4} Mr. Zupancic now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST TYLER ZUPANCIC.

{¶5} In his sole assignment of error, Mr. Zupancic argues that his conviction was not supported by sufficient evidence. We disagree.

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph

two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶7} Mr. Zupancic was convicted of obstructing official business, under R.C. 2921.31(A), which provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

"A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996). Law enforcement officers are considered public officials. *See* R.C. 2921.01(A).

{¶8} The front desk clerk at the Days Inn in Wooster testified at trial that, on November 24, 2019, she received complaints from hotel guests about Mr. Zupancic and M.S. fighting in Room 113. The odor of marijuana was also apparent all throughout the first floor of the hotel. She spoke to Officer Ruggerri in the parking lot, informed him of the trouble with M.S. and Mr. Zupancic in Room 113, informed him of the odor of marijuana, and gave him permission to walk through the hotel. Officer Ruggerri testified that he knew Mr. Zupancic from prior encounters and learned that he had a warrant for his arrest. The officer went to Room 113 and testified that the odor of marijuana was overwhelming as he approached the door to the room. He heard the voices of both a male and a female talking from inside of the room. He was eventually able to converse

with M.S. through the door, but testified that "everything became quiet" once he mentioned that Mr. Zupancic had a warrant for his arrest. Several other officers arrived at the scene over time because the entire incident took approximately an hour to an hour-and-a-half. M.S. would sometimes respond and talk with the officers through the door, but would sometimes remain silent. At some point, the officers found out from hotel staff that M.S. and Mr. Zupancic were on the hotel's "do not rent" list. The front desk clerk returned to Room 113 and told M.S. through the door that the hotel manager wanted the couple to leave the hotel. M.S. requested time to gather her belongings, but after much more time elapsed the manager authorized the clerk to use a master key to open the door. After more prompting from officers, M.S. eventually unhooked the door chain and the officers could finally see inside of the room.

{¶9}    Officer Ruggerri's body cam video was entered into evidence. In the video, the officers wait at the threshold of the open doorway while watching M.S. pack up her belongings for another 15 minutes. Once M.S. finally vacates the room, the officers enter to look for Mr. Zupancic. They can be seen and heard in the video clearly announcing their presence, identifying themselves as police officers, and asking for anyone else in the room to come out. After receiving no response, they spend the next minute searching the room and ultimately discover Mr. Zupancic hiding underneath the mattress and inside one of the enclosed bedframes. With weapons drawn, they immediately remove him from underneath the bed. Officer Ruggerri testified that the amount of time that elapsed, combined with having to physically check underneath beds that cannot be seen under, was a delay in their investigation. After handcuffing Mr. Zupancic and reading him his *Miranda* rights, one of the officers asks him, "Be honest with me: Could you hear us?" Mr. Zupancic's response to this question is faint and unintelligible in the video, but Officer Ruggerri testified that Mr. Zupancic admitted to hearing the officers and admitted to knowing he had a

warrant for his arrest. Officer Ruggerri testified that it typically takes two minutes to process someone with a warrant if they are compliant. Officer Phillip Coe testified that while speaking to Mr. Zupancic outside of the hotel, Mr. Zupancic claimed that he climbed under the bed and pulled the bed back on top of himself to elude the officers. He testified that Mr. Zupancic admitted that he knew the officers were present and that he heard them calling out to him.

{¶10} Mr. Zupancic argues that the State failed to set forth sufficient evidence that he "prevent[ed], obstruct[ed], or delay[ed]" the officers' performance of their duties by "hamper[ing] or imped[ing]" them. He first relies on Officer Coe's testimony that the police were conducting a safety sweep of the room and claims that hiding underneath the mattress did not impede the officer's duties, as they were "not searching the room just to find [him]." He also argues that he was already underneath the mattress when officers entered the room, and the officers did not call out for him or ask him to come out, so he did not take any action to impede, hamper, or delay the officers in their duties. We interpret these arguments collectively as challenging the sufficiency of the evidence with regard to whether Mr. Zupancic did any act that hampered or impeded the officers in the performance of their lawful duties. *See* R.C. 2921.31(A).

{¶11} "An affirmative act is required to support a conviction for obstructing official business, and the mere failure to obey a police officer's request *may* not always amount to obstruction." (Emphasis added.) *State v. Moss*, 9th Dist. Summit No. 28986, 2018-Ohio-4747, ¶ 12. *See also State v. McCrone*, 63 Ohio App.3d 831, 834 (9th Dist.1989), quoting *Hamilton v. Hamm*, 33 Ohio App.3d 175, 176 (12th Dist.1986) ("Generally, a person 'cannot be guilty of obstructing official business by doing nothing * * *.'"). "However, a suspect may indeed obstruct official business when he creates a significant delay by ignoring an officer's repeated orders,

thereby impeding the officer's ability to perform his lawful duties." *Moss* at ¶ 12. The total course of the suspect's conduct must be considered, rather than viewing his actions in isolation. *Id.*

{¶12} In *State v. Welch*, this Court affirmed convictions for obstructing official business wherein an officer went to a residence to arrest the appellant on a warrant, believing the appellant to be there, but the appellant hid in the attic instead of coming out. *See State v. Welch*, 9th Dist. Summit No. 22002, 2004-Ohio-4582, ¶ 17-18. We have also affirmed convictions for obstructing official business in cases where the evidence showed the suspects ran into a basement and hid behind a furnace when police announced their presence, although these cases admittedly involved both flight from and hiding from the police. *See State v. Lamb*, 9th Dist. Summit No. 23418, 2007-Ohio-5107, ¶ 22; *State v. Griffin*, 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26, 1999). Our sister courts in the Second and Fourth Districts have found hiding to evade the police to be an affirmative act which impedes or hampers the officers in their duties, which is sufficient to support convictions for obstructing official business. *See State v. Gillam*, 2d Dist. Montgomery No. 27998, 2019-Ohio-808, ¶ 15, citing *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 31-32 ("[H]iding from the police in response to an order to surrender is sufficient to constitute the offense of obstructing official business."); *State v. Newsome*, 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, ¶ 11 (finding affirmative acts to support an obstructing official business conviction when the appellant ran and hid from police even before they spotted him because the evidence showed he knew they were looking for him and sought to evade them); *State v. Bailey*, 4th Dist. Hocking No. 09CA9, 2010-Ohio-213, ¶ 35-36 (recognizing "little distinction" between the affirmative acts of purposely hiding in a bathroom and fleeing from police, both of which impeded or hampered the officers' performance because they had to find the suspect).

{¶13} After reviewing the record, we conclude that the State presented sufficient evidence, if believed, to demonstrate that Mr. Zupancic committed the offense of obstructing official business. The evidence showed that Mr. Zupancic had an active warrant for his arrest and the officers had reason to believe he was inside of Room 113. The odor of marijuana coming from the room was also overwhelming. When Officer Ruggerri explained through the hotel door that Mr. Zupancic had a warrant for his arrest, Mr. Zupancic did more than simply refuse to respond to the officer verbally or open the door. Instead, he later admitted to the officers that he tried to elude them by lifting up a mattress, crawling inside of the enclosed bedframe underneath, and then pulling the mattress back on top of himself to hide. These actions constituted affirmative acts that hampered or impeded the officers in their investigation. The evidence established that handling Mr. Zupancic's warrant could have taken a matter of minutes, but the incident was instead delayed for hours. Even after the door was finally opened, the body cam video showed officers standing at the threshold and talking to M.S. as she packed up her belongings for another 15 minutes, all while Mr. Zupancic remained hidden under the bed. When the officers finally entered the room to look for him, clearly identifying themselves again and asking anyone in the room to come out, Mr. Zupancic stayed hidden under the bed for another minute and refused to respond until being discovered by the officers during their protective sweep. He then admitted to the officers that he heard them, knew they were looking for him because of his warrant, and hid under the bed to elude them.

{¶14} Based on our review of the record and the evidence presented, we conclude that the trial court, as trier of fact, could have reasonably determined that the State proved beyond a reasonable doubt all of the elements of obstructing official business. Mr. Zupancic committed

affirmative acts that hampered or impeded police officers in their investigation, and did so with the purpose to prevent, obstruct, or delay that investigation.

{¶15} Mr. Zupancic's sole assignment of error is overruled.

III.

{¶16} Mr. Zupancic's sole assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.