[Cite as *Akron v. Ragsdale*, 2025-Ohio-1048.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| CITY OF AKRON | C.A. Nos. 30980 |
|---|---|
| | 30981 |
| Appellee | |
| | |
| v. | |
| | APPEAL FROM JUDGMENT |
| FRANKLIN D. RAGSDALE, III | ENTERED IN THE |
| | AKRON MUNICIPAL COURT |
| Appellant | COUNTY OF SUMMIT, OHIO |
| | CASE Nos. 22 CRB 07355 |
| | 23 CRB 02801 |

DECISION AND JOURNAL ENTRY

Dated: March 26, 2025

STEVENSON, Judge.

**{¶1}** Defendant-Appellant Franklin D. Ragsdale, III appeals from the decision and judgment of the Akron Municipal Court. For the reasons set forth below, we affirm the trial court's judgment denying the motions for acquittal based on the sufficiency of the evidence in his 2023 case and reverse the 2022 case based on a violation of his statutory speedy trial rights, and remand for further proceedings consistent with this opinion.

I.

**{¶2}** This appeal arises from two criminal cases that were consolidated for trial purposes. Mr. Ragsdale was charged in Case No. 22CRB07355 with one count of resisting arrest in violation of R.C. 2921.33 and Akron City Code 136.13, a second-degree misdemeanor; one count of obstructing official business in violation of Akron City Code 136.11, a second-degree misdemeanor; and one count of disorderly conduct in violation of Akron City Code 132.01, a

fourth-degree misdemeanor ("the 2022 case"). The charges in the 2022 case stemmed from an August 28, 2022, incident.

{¶3} Mr. Ragsdale was not immediately identified or arrested in the 2022 case. A summons was issued after he was later identified and he turned himself in on February 23, 2023. Mr. Ragsdale was arraigned in this case on February 24, 2023.

{¶4} Mr. Ragsdale was later arrested and charged in Case No. 23CRB02801 with one count of obstructing official business in violation of Akron City Code 136.11, a second-degree misdemeanor, and one count of disorderly conduct in violation of Akron City Code 132.01, a fourth-degree misdemeanor ("the 2023 case"). The charges in the 2023 case stemmed from an incident that occurred on April 24, 2023. Mr. Ragsdale was also arrested and charged with an offense in a third case, but he was acquitted in that case and there is no appeal in that matter. The trial court consolidated the 2022 and 2023 cases for trial purposes.

{¶5} Mr. Ragsdale moved to dismiss the charges against him in the 2022 case for violation of his speedy trial rights on the morning of the August 8, 2023, trial. The trial court took the matter under advisement, giving the City of Akron ("the City") an opportunity to submit a written response, and trial commenced. The City filed a written response in opposition that same day. The trial court issued a journal entry denying Mr. Ragsdale's motion to dismiss on August 9, 2023.

{¶6} The jury found Mr. Ragsdale guilty in the 2022 case of resisting arrest and obstructing official business, and guilty in the 2023 case of obstructing official business. Mr. Ragsdale was acquitted of disorderly conduct charges in both cases.

{¶7} The trial court denied Mr. Ragsdale's motions for judgment of acquittal pursuant to Crim.R. 29. Mr. Ragsdale had moved for a judgment of acquittal in both the 2022 and 2023

cases. He moved for judgment at trial after the City concluded its case in chief and he renewed his motion following the jury verdict. The trial court set the cases for sentencing and it ordered a pre-sentence investigation ("PSI").

{¶8} The trial court sentenced Mr. Ragsdale on both cases to 60 days in jail with all 60 days suspended in lieu of home incarceration and the completion of an anger management class. Mr. Ragsdale appeals, asserting three assignments of error for our review. This Court addresses Mr. Ragsdale's assignments of error out of order for ease of review.

II.

## ASSIGNMENT OF ERROR I

### THE TRIAL COURT ERRED BY FAILING TO DISMISS [THE 2022 CASE] ON STATUTORY SPEEDY TRIAL GROUNDS.

{¶9} Mr. Ragsdale argues in his first assignment of error the trial court erred in denying his motion to dismiss the 2022 case for violation of his speedy trial rights. Based on the record before this Court, we agree.

{¶10} This Court notes that Mr. Ragsdale has based his assignment of error solely on his statutory right to a speedy trial, and this Court will limit its analysis accordingly. *See State v. Roberts*, 2023-Ohio-1025, ¶ 8 (9th Dist.) (appellate review limited to the statutory right to a speedy trial as the appellant did not raise constitutional arguments on appeal); *State v. Detamore*, 2016-Ohio-4682, ¶ 6 (9th Dist.) (this Court declined to address the constitutional right to a speedy trial as the appellant did not develop a constitutional argument on appeal).

### Standard of Review

{¶11} "Speedy trial issues present a mixed question of fact and law." *State v. McCain*, 2016-Ohio-4992, ¶ 8 (9th Dist.). "'In reviewing a trial court's determination of whether a defendant's right to a speedy trial was violated, an appellate court applies the de novo standard to

questions of law and the clearly erroneous standard to questions of fact.'" *State v. Gilbert*, 2016-Ohio-3209, ¶ 9 (9th Dist.), quoting *State v. Auterbridge*, 1998 WL 103348, *1 (9th Dist. Feb. 25, 1998), citing *United States v. Smith*, 94 F.3d 204, 208 (6th Cir. 1996) and *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996). Therefore, accepting facts if based on competent, credible evidence, this Court must freely review the application of the law to the facts. We must independently review whether the accused was deprived of his statutory right a speedy trial, strictly construing the law against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57 (1996) (courts are to "strictly construe the speedy trial statutes against the state").

## Right to a Speedy Trial

**{¶12}** "The right of an accused to a speedy trial is recognized by the Constitutions of both the United States and the state of Ohio." *State v. Pachay*, 64 Ohio St.2d 218, 219 (1980). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *Id.* at syllabus. Accordingly, "for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 *et seq.* and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987).

## Tolling

**{¶13}** Mr. Ragsdale was charged in the 2022 case with resisting arrest and disorderly conduct, which are both second-degree misdemeanors. R.C. 2921.33(D); Akron City Code 136.11(B). Under the speedy trial statute, a person charged with a second-degree misdemeanor must be brought to trial within 90 days after the person's arrest or the service of summons. R.C. 2945.71(B)(2); *see* R.C. 2945.71(D) (providing that a person charged with offenses of different

degrees that "arose out of the same act or transaction . . . shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged . . . ."). "Certain conditions, however, operate to 'toll' the time within which an accused must be brought to trial." *Roberts*, 2023-Ohio-1025, at ¶ 11 (9th Dist.). R.C. 2945.72 sets forth the various statutory tolling events, including "[t]he period of any continuance granted on the accused's own motion . . . ." R.C. 2945.72(H).

{¶14} We must construe extensions of time strictly against the City. *State v. Singer*, 50 Ohio St.2d 103, 109 (1977) (R.C. 2945.72 "extensions are to be strictly construed, and not liberalized in favor of the state"). *Accord Brecksville*, 75 Ohio St.3d at 57. Hence, if a record is ambiguous or it is unclear as to why a continuance was issued, a reviewing court "construe[s] the record in favor of the accused." *State v. McDonald*, 2003-Ohio-4342, ¶ 51 (8th Dist.), citing *Singer* at 109; *accord State v. Harris*, 2012-Ohio-5868, ¶ 9 (9th Dist.) (in order to attribute a continuance to a defendant, "it must be apparent from the face of the record that the defendant did, in fact, request a continuance in order for time to be tolled for speedy trial purposes"); *State v. Charity*, 2013-Ohio-5385, ¶ 35 (7th Dist.) (where record is unclear as to continuances, and "[i]n reviewing legal issues in a speedy trial claim," the court recognized that it "must strictly construe the [speedy trial] statutes against the State."); *State v. Michailides*, 2018-Ohio-2399, ¶ 8 (8th Dist.) ("in analyzing the procedural time-line record of the case," for speedy trial purposes, the "court is required to strictly construe any ambiguity in the record in favor of the accused.").

{¶15} Mr. Ragsdale argues that the 2022 case should have been dismissed because "more than 90 days passed between the time [he] turned himself in on the charges and the trial." He asserts the trial court erred as a matter of law by tolling the speedy trial clock pursuant to R.C. 2945.72(H).

{¶16} The City does not dispute that Mr. Ragsdale was not brought to trial within 90 days of his arraignment. It argues that several R.C. 2945.72 tolling events occurred and that Mr. Ragsdale was timely brought to trial.

## Record

{¶17} The record reflects the following timeline in the 2022 case:

February 24, 2023: Mr. Ragsdale arraigned. Pretrial set for March 6, 2023.

March 6, 2023: Pretrial held. Court set a second pretrial for March 20, 2023, but did not provide a reason for the continuance in its order.

March 20, 2023: Second pretrial held. Court set a status for April 18, 2023, and trial for May 3, 2023. Although the record is silent as to when any continuance may have been granted, the parties agree that the April 18, 2023, status did not go forward.

April 10, 2023 –
April 25, 2023: Per Akron Municipal Court's presiding/administrative judge, courtroom access restricted during this time due to "THE POTENTIAL FOR CIVIL UNREST IN THE CITY OF AKRON[.]" During this time, protests to a police-involved shooting were occurring in the City of Akron.

April 24, 2023: Mr. Ragsdale arrested and charged in the 2023 case. Pretrial set for May 2, 2023.

May 2, 2023: Pretrial held in the 2023 case. Court scheduled a second pretrial for May 23, 2023, in both the 2022 and 2023 case. The record is silent for any reason for continuing the pretrial until May 23, 2023.

June 28, 2023: Jury trial set to begin in both the 2022 case and the 2023 case. Court issued an order on June 27, 2023, continuing trial on its "own motion due to the anticipated length [of] the Jury Trial[.]" Court continued trial in both cases to August 8, 2023.

August 8, 2023: Jury trial commenced in both the 2022 case and the 2023 case.

## Analysis

{¶18} Mr. Ragsdale argues that the 2022 case should have been dismissed based on a statutory speedy trial violation. The City argues that, at Mr. Ragsdale's request, the March 6, 2023,

pretrial was continued to March 20, 2023, and that, as such, approximately 14 days were tolled. The City further argues that Mr. Ragsdale requested a continuance of the April 21, 2023, status conference which was continued to May 23, 2023. Because courtroom access was limited per the presiding/administrative judge until April 25, 2023, the City argues that approximately 28 days were tolled as a result of the continued April status conference. It is the City's position that approximately 42 days were tolled pursuant to R.C. 2945.72(H) as a result of these requested continuances.

{¶19} As previously stated, this Court has recognized that, "[w]hile a continuance attributable to the defendant does not necessarily have to be journalized, it must be apparent from the face of the record that the defendant did, in fact, request a continuance in order for time to be tolled for speedy trial purposes." *Harris*, 2012-Ohio-5868, at ¶ 9 (9th Dist.). This Court further stated in *Harris*:

> 'ideally a court should journalize its rationale for a continuance. In the absence of such an entry the court runs the risk that a continuance, which would otherwise be attributable to the accused, will not be so construed on appeal. But this does not mean that an unjournalized continuance may never be charged to a defendant. When the record indicates that the continuance was attributable to the defendant, then such delay will be assessed to him even in the absence of a court's journal entry.'

*Id.*, quoting *State v. Bumbalough*, 81 Ohio App.3d 408, 410 (9th Dist. 1992).

{¶20} The city argued to the trial court in *Harris* that "it was the defendant who asked for a continuance of the pretrial hearing[,]" and that "it should not be punished for not bringing [the defendant] to trial within ninety days . . . ." *Harris* at ¶ 10. The trial court agreed and "denied the motion to dismiss [on speedy trial grounds] on the basis that the matter had been previously continued at the request of [the defendant]." *Id.*

{¶21} The defendant argued on appeal in *Harris* "that the trial court erred in denying his motion to dismiss on the basis that his right to a speedy trial had been violated." *Id.* at ¶ 5. This Court agreed, concluding that continuances could not be attributed to the defendant based on the record before it. *Id.* at ¶ 11. Time could not be tolled and attributed to the defendant pursuant to R.C. 2945.72(H) because the docket did not attribute any continuances to the defendant nor did the trial court's journal entries indicate that pretrials were continued at the defendant's request. *Id.* Further, as in this case, the record did not include any transcripts from the pretrial conferences. *Id.* Because "there [was] nothing in the record to indicate that the pretrial conference had been previously continued at the request of the defendant[,]" and "[b]ecause it [was] not apparent from the record that there were tolling events[,]" this Court held that "the trial court erred in denying [the defendant's] motion to dismiss." *Id.* at ¶ 12.

{¶22} Similarly, there is nothing in the record attributing continuances to Mr. Ragsdale. Mr. Ragsdale did not file any motions for continuances, nor did the trial court's journal entries attribute any continuances to him. The City alleges that Defendant submitted an email request to continue the April 21, 2021, pretrial but that email does not appear in the record. Further, the record does not include transcripts from any pretrials, status conferences, or other court hearings where continuances may have been discussed. Accordingly, we cannot consider the pretrial continuance from March 6, 2023, to March 20, 2023, to be a tolling event or the period from May 3, 2023, until June 27, 2023, because there is nothing on the record before us indicting that defendant requested a continuance or explaining why the court may have reasonably continued the matter on its own basis.

{¶23} Mr. Ragsdale and the City agree that the statutory speedy trial time began to run on February 24, 2023, and that trial went forward approximately 165 days later on August 8, 2023.

Assuming without deciding that the period from April 10, 2023, to May 2, 2023, was tolled for various reasons[1] and the trial court's 41-day trial continuance from June 28, 2023, to August 8, 2023, was a reasonable and valid tolling event, this totals approximately 63 days for tolling purposes. Assuming without deciding these were valid tolling events, based on the record before this Court, Mr. Ragsdale was brought to trial in the 2022 case approximately 102 days after his arraignment.

{¶24} Based on the record before this Court, we conclude Mr. Ragsdale was not brought to trial within the speedy trial window set forth in R.C. 2945.71(B) in the 2022 case. Accordingly, we conclude the trial court erred in denying Mr. Ragsdale's motion to dismiss for violation of his speedy trial rights. Mr. Ragsdale's first assignment of error is sustained.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO MERGE OFFENSES THAT THE CITY CONCEDED TO BE ALLIED.**

{¶25} Mr. Ragsdale argues in his third assignment of error that the trial court committed plain error by failing to merge the resisting arrest and obstructing official business offenses in the 2022 case. He asserts that these offenses are allied offenses and should have been merged under R.C. 2941.25. However, our resolution of Mr. Ragsdale's first assignment of error has rendered this assignment of error moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

### ASSIGNMENT OF ERROR II

---

[1] The City suggests that time tolled under the statute because the Court was closed from April 10, 2023 until April 25, 2023 due to protests to a police-involved shooting. Mr. Ragsdale was charged with a new offense on April 24, 2023, and he appears to have been incarcerated in an out of county jail for a few days during this period. Because there is no docket entry or other evidence in the record explaining if the April 18, 2023 status took place, or if it did not why it was continued, it is difficult to determine if time should have been tolled. For these reasons, we assume without deciding that time tolled from April 10, 2023 until May 2, 2023, as even assuming time tolled, the matter was still tried outside the speedy trial deadline.

**THE TRIAL COURT ERRED BY DENYING DEFENDANT RAGSDALE'S MOTIONS FOR JUDGMENT OF ACQUITTAL.**

{¶26} Mr. Ragsdale argues in his second assignment of error that the trial court erred by denying his motions for judgment of acquittal in the 2022 case and the 2023 case. Our resolution of the first assignment of error has rendered this assignment of error moot as it pertains to the 2022 case, and we decline to address it. *See* App.R. 12(A)(1)(c). As it pertains to the 2023 case, we disagree with this assignment of error.

## Crim.R. 29 Motion for Acquittal

{¶27} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 2010-Ohio-634, ¶ 33 (9th Dist.). Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Although the standard of review is de novo, the appellate court does not resolve evidentiary conflicts or assess the credibility of witnesses as those functions belong to the trier of fact." *State v. Taylor*, 2018-Ohio-2921, ¶ 27 (9th Dist.).

## The 2023 Case

{¶28} Mr. Ragsdale was charged in the 2023 case with one count of obstructing official business in violation of Akron City Code 136.11, a second-degree misdemeanor, and one count of disorderly conduct in violation of Akron City Code 132.01, a fourth-degree misdemeanor. The

charges stemmed from an April 24, 2023, incident where Mr. Ragsdale blocked a vehicle officers were attempting to move, process and tow.

{¶29} Akron Police Captain Michael Yohe testified that, on April 24, 2023, a group of protestors in the City of Akron formed "convoys" where "they would get out, in cars and on foot, and walk through different areas blocking different streets and intersections . . . ." Captain Yohe watched the "mobile protest" in real time from a command post via a drone and a live video Mr. Ragsdale was streaming on social media. Captain Yohe testified the convoy raised safety concerns and that it almost caused multiple accidents due to blocked traffic and intersections.

{¶30} One vehicle involved in the convoy was a blue Chevy Cruze ("the Chevy"). Captain Yohe saw this vehicle illegally blocking roadways, traffic, and intersections. He also saw individuals hanging outside of the Chevy and illegally riding on the outside of the vehicle while in motion. "Because of all the violations [he] had seen[,]" Captain Yohe testified that justification existed to arrest the Chevy's occupants and tow the vehicle. Captain Yohe instructed the officers to initiate a stop of the Chevy, to arrest its occupants, and to tow the vehicle. Mr. Ragsdale was not in the Chevy nor was he the owner of said vehicle.

{¶31} Per Captain Yohe's instructions, Officer Scott Locaffaro initiated a stop of the Chevy at a gas station. Officer Locaffaro testified that "around ten" protestors were present when he arrived at the gas station. Officer Locaffaro became concerned when more protestors, including Mr. Ragsdale, arrived at the gas station. Captain Yohe also became concerned when he saw "other folks arrive on the scene, including Mr. Ragsdale, and start approaching my officers . . . ." Captain Yohe described Mr. Ragsdale's behavior as "confrontational" and he testified that Mr. Ragsdale "aggressively approached and walked to [the officers] shoving the camera in their face[.]"

{¶32} Captain Yohe testified that it became unsafe for the officers at the gas station due to the number of "harassing" and "confrontational" protestors. Akron Police Crime Analyst Mary Infantino was watching Mr. Ragsdale's live social media video and she also observed him following and approaching the officers. Based on her observations, safety was a concern at the gas station.

{¶33} Due to safety concerns, Captain Yohe instructed the officers to move the Chevy "to a safer location in order for them to complete the inventory process and the tow paperwork." Captain Yohe testified that officers are permitted to move vehicles for processing and towing under extraordinary circumstances and when necessary to minimize the danger to the officers and bystanders.

{¶34} Officer Locaffaro testified that, due to the growing crowd, safety concerns, and the fact that protestors were following them, he moved the Chevy from the gas station to two other locations to be safely processed and towed. He testified that Mr. Ragsdale continued following the officers to each location.

{¶35} Officer Locaffaro testified that the first location the officers took the Chevy was Jennings Community Learning Center. Mr. Ragsdale parked his vehicle across the street, ran up to the Chevy and stood in front of it while yelling at the officers and filming them as Officer Locaffaro was trying to move the vehicle from the school. Mr. Ragsdale continued standing in front of the Chevy after the officers directed him to move out of the way. Mr. Ragsdale refused to move until Officer Locaffaro's partner, Officer Jacob Yakuvik, brandished his taser. Officer Locaffaro testified that, by stepping in front of the vehicle, Mr. Ragsdale "[a]bsolutely" delayed him from doing his job. He also testified that having to take the vehicle from location to location, because of Mr. Ragsdale's conduct, further delayed him from performing his job.

{¶36} Officer Yakuvik observed Mr. Ragsdale following the officers and he saw him at one location "step[] in front of . . . my partner's car [the Chevy] that we were moving for towing." Officer Yakuvik testified that Mr. Ragsdale "got in the way of my partner's vehicle[,]" that he "would not move out of the way[,]" and that he "obstruct[ed] my partner from moving [the Chevy] . . . ." Mr. Ragsdale continued to follow the officers to a Swenson's restaurant and finally a former entertainment center parking lot before the officers arrested him. Officer Yakuvik testified that Mr. Ragsdale delayed the officers from safely doing their job.

{¶37} In addition to Captain Yohe, Officer Locaffaro, Officer Yakuvik, and Crime Analyst Infantino, the jury heard testimony from Sergeant Vince Tersigni, and Officer David Beck. Like Captain Yohe, Sergeant Tersigni testified that officers are permitted to move vehicles for towing purposes under extraordinary circumstances. Officer Beck agreed that an officer may move a car to another location for towing when there is concern for officer safety. Officer Beck was present at the gas station on April 24, 2023 and he testified that the officers had to move vehicles that day because they "had got[]ten word that a bunch of the people involved in the protest were coming our way, so . . . to stop more confrontation, we were going to an open area where they couldn't block in cars, block in the tow truck and other officers."

{¶38} Among other evidence, also played at trial and admitted into evidence was videos from the officers' body worn cameras, Mr. Ragsdale's social media video, and drone footage. Mr. Ragsdale did not testify at trial.

{¶39} The jury found Mr. Ragsdale guilty in the 2023 case of obstructing official business and he was acquitted of the disorderly conduct charge.

## Analysis

{¶40} Akron City Code 136.11(A) provides:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.

*Compare* R.C. 2921.31(A). Obstructing official business is a misdemeanor of the second degree.

Akron City Code 136.11(B). A person acts with purpose when:

> it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Akron City Code 130.08(A). *Compare* R.C. 2901.22(A) "'Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case.'" *State v. Moss*, 2018-Ohio-4747, ¶ 7 (9th Dist.), quoting *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist. 1996). "Law enforcement officers are considered public officials." *Id.*, citing R.C. 2921.01(A).

{¶41} Mr. Ragsdale argues that officers had no legal justification to move the Chevy and that, therefore, he did not obstruct official business. The City argues that sufficient evidence was presented at trial that, considering the extraordinary circumstances that were present on April 24, 2023, and the resulting safety concerns, the officers had authority to move the Chevy from the gas station.

{¶42} Captain Yohe was watching the mobile protest on April 24, 2023, and he testified that, based on the illegal activity of the Chevy and its occupants, he instructed the officers to arrest the Chevy's occupants and to tow the vehicle. He also testified that the department's policies and procedures permit officers to move vehicles for processing and towing under extraordinary circumstances. Captain Yohe testified that extraordinary circumstances existed at the gas station due to the increasing crowd of protestors and the concern for officer and bystander safety. Crime

Analyst Infantino and Officer Beck agreed that safety was a concern at the gas station. Like Captain Yohe, Sergeant Tersigni and Officer Beck testified that officers may move a vehicle for processing and towing under extraordinary circumstances and when safety issues arise. Officer Locaffaro became increasingly concerned for his safety while at the gas station.

{¶43} After the officers moved the Chevy due to the crowd at the gas station, they took the car to a local school to process it. Mr. Ragsdale followed the officers to the school and intervened in their efforts. Officer Locaffaro testified that Mr. Ragsdale stood in front of the Chevy when he was trying to move the vehicle from a school, the second location officers had moved to evade the growing group of protestors. Mr. Ragsdale continued standing in front of the Chevy, "block[ing]" the vehicle, even after officers directed him to move. Mr. Ragsdale moved only after Officer Yakuvik brandished his taser. Officer Yakuvik observed Mr. Ragsdale blocking the Chevy and "obstruct[ing] [his] partner from moving . . . ." Officer Locaffaro and Officer Yakuvik testified that, by standing in front of the Chevy and blocking the vehicle, Mr. Ragsdale delayed the officers from doing their job. Mr. Ragsdale travelled to two other locations to interfere with the officer's attempts to tow the vehicle delaying the officers in their efforts to further their duties.

{¶44} A review of the record reveals that the City presented evidence in the 2023 case that, if believed, Mr. Ragsdale committed the offense of obstructing official business. Sufficient evidence was presented that Mr. Ragsdale acted with purpose to prevent, obstruct, or delay the officers in performing their lawful duties, which can be ascertained from the surrounding circumstances in this case. Akron City Code 136.11(A).

{¶45} We therefore conclude, after viewing the evidence in a light most favorable to the prosecution, that the trier of fact could have reasonably found the elements of obstructing official business to be proved beyond a reasonable doubt. Furthermore, we conclude that the trial court did

not err in denying Mr. Ragsdale's Crim.R. 29 motions for acquittal. Accordingly, Mr. Ragsdale's second assignment of error is overruled.

### III.

{¶46} Based on the foregoing, in case number 30981, on appeal from case number 23CRB02801, the judgment of the Akron Municipal Court is affirmed. In case number 30980, on appeal from case number 22CRB07355, the judgment of the Akron Municipal Court is reversed and Mr. Ragsdale is discharged as provided in R.C. 2945.73(B).

Judgment affirmed in part,
reversed in part,
and matter remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

LOUIS E. GRUBE and KENDRA N. DAVITT, Attorneys at Law, for Appellant.

DEBORAH S. MATZ, Director of Law, and BRIAN D. BREMER and JACQUENETTE S. CORGAN, Assistant Directors of Law, for Appellee.