[Cite as *State v. Kendrick*, 2023-Ohio-1763.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220459 |
| | | TRIAL NO. C-22CRB-1534 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| OBA KENDRICK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 26, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}　After issuing a number of threats to his ex-girlfriend, defendant-appellant Oba Kendrick was convicted of aggravated menacing. On appeal, he raises three assignments of error, challenging the denial of his speedy trial rights, the sufficiency and manifest weight of the evidence, and the failure to award jail-time credit. We overrule his first two assignments of error: Mr. Kendrick failed to raise the speedy trial argument below—thus waiving the issue on appeal—and his manifest weight and sufficiency challenges are meritless in light of the victim's testimony and evidentiary record at trial. But we sustain Mr. Kendrick's assignment of error challenging his sentence, as the trial court failed to award him jail-time credit. Accordingly, we reverse the trial court's judgment in part and remand this cause with instructions to award Mr. Kendrick the appropriate jail-time credit. We affirm the trial court's judgment in all other respects.

I.

{¶2}　Sometime in late 2020 or early 2021, victim Lakina Webb ended her six-year relationship with Mr. Kendrick. The pair had lived together for five years prior to the break-up. They had no children together, but Ms. Webb had children of her own.

{¶3}　Mr. Kendrick did not handle the break-up well, and he made various attempts to resuscitate the relationship. When Ms. Webb rejected these entreaties, he began sending her aggressive text messages in late 2021, including: "Now [I'm] starting to hate you," "I wish you nothing but the worst [middle-finger emoji]," "FYI, [I'm going to] shoot any n**** I see you with that's on everything I love," "I got so much hate in me right now," and "At this point, [I'm going to] take my pain out on the

[world emoji]." Mr. Kendrick also contacted Ms. Webb over Facebook Messenger, with messages in similar vein: "I know you [are going to] block me soon, but o well it was only a matter of time anyway," and "[I'm going to] make you hate now." As a result, Ms. Webb blocked his Facebook account. During her testimony, Ms. Webb stated that she interpreted one of his messages—"I'm going to end up doing something"—as a threat to harm himself or her, her now-fiancé, her children, or her home.

{¶4} In addition to the slew of text and Facebook messages, Ms. Webb witnessed Mr. Kendrick drive by her house following the break-up. One day in December 2021, while she sat on her front porch, Mr. Kendrick drove his mother's car slowly down the street with the windows open. He drove past her house multiple times, making extended eye contact with her during each pass. Ms. Webb viewed this behavior as an attempt to intimidate her.

{¶5} Moreover, Ms. Webb believed that Mr. Kendrick was not taking his prescribed medication for his bipolar diagnosis. She also testified that he suffered from anger issues, explaining that she had seen him "explode" before (but clarified that he had never physically assaulted her). She knew that he had access to firearms through family members and had seen him with a firearm in the past. Based on these facts, Ms. Webb testified that she feared that Mr. Kendrick was going to harm her by shooting her or otherwise attacking her.

{¶6} Mr. Kendrick's threats escalated during a phone call in late December 2021. At the time of the phone call, he had learned that Ms. Webb was dating someone new, and he threatened to shoot her, her house, her car, or anyone with her if he saw

her with her new boyfriend. Based on the backdrop described above, Ms. Webb feared that he would follow through on these threats.

{¶7} The day after the phone call, Ms. Webb went to the police and reported Mr. Kendrick's threats. In January 2022, the state charged him with aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree. Following a bench trial in September 2022, the court found Mr. Kendrick guilty. The trial court sentenced him to 178 days in jail with 178 days suspended, two years of probation with conditions of anger management and/or corrective thinking classes, and compliance with any other postevaluation treatment recommendations. The court also issued a postconviction no-contact order. Mr. Kendrick timely appealed.

II.

{¶8} In his first assignment of error, Mr. Kendrick claims a denial of his right to a speedy trial.

{¶9} The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." Similarly, the Ohio Constitution guarantees that "the party accused shall be allowed * * * a speedy public trial * * *." Article I, Section 10, Ohio Constitution.

{¶10} In the case at hand, Mr. Kendrick was charged with aggravated menacing, a first-degree misdemeanor. *See* R.C. 2903.21. Pursuant to R.C. 2945.71, a defendant charged with a first- or second-degree misdemeanor must be tried within 90 days of the defendant's arrest or service of summons. R.C. 2945.71(B)(2). And "R.C. 2945.73(B) provides the accused shall be discharged if not brought to trial within the required time, upon his motion at or prior to trial." *State v. Cutcher*, 56 Ohio St.2d 383, 384, 384 N.E.2d 275 (1978).

{¶11} Typically, our review of speedy trial claims raises questions of law and fact. *See State v. Gage*, 2018-Ohio-480, 104 N.E.3d 994, ¶ 5 (1st Dist.) ("Our review of the trial court's decision [denying defendant's motion to dismiss for an alleged speedy trial violation] involves mixed questions of fact and law."). This court accepts the trial court's factual findings that are supported by competent, credible evidence, but applies a de novo standard of review to the trial court's legal conclusions. *Id.* However, as Mr. Kendrick acknowledges, he failed to raise this issue below. He requests that this court follow a plain error standard of review pursuant to caselaw from the Sixth, Eighth, Tenth, and Eleventh Appellate Districts.

{¶12} But it is well-established in the First District that the failure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents an appellant from raising the issue on appeal. As we recently emphasized, " '[f]ailure to raise the speedy-trial issue prior to the commencement of trial effects a waiver of the claim.' " *State v. Bingham*, 1st Dist. Hamilton No. C-210434, 2022-Ohio-2074, ¶ 11, quoting *State v. Peoples*, 1st Dist. Hamilton No. C-940809, 1995 Ohio App. LEXIS 4033, 8 (Sept. 20, 1995). Part of the reason for this is that a speedy trial claim typically requires the trial court to decide whether certain delays were attributable to the state or the defendant. By failing to broach the issue with the trial court, the defendant deprives the court of the opportunity to make those often record-intensive determinations.

{¶13} As a result, when a defendant fails to raise a speedy trial argument below, "it is waived on appeal, except in the context of an ineffective-assistance-of-counsel claim." *State v. Lykins*, 1st Dist. Hamilton No. C-220103, 2022-Ohio-3935, ¶ 13. Mr. Kendrick raises no such claim in the context of this appeal. Because he failed

5

to raise the speedy trial argument below, the matter is waived on appeal, and his first assignment of error is overruled.

III.

{¶14} Next, Mr. Kendrick challenges the sufficiency and manifest weight of the evidence supporting his conviction for aggravated menacing.

{¶15} To determine the sufficiency of the evidence to support a criminal conviction, we consider whether, after viewing the evidence in the light most favorable to the state, any reasonable trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We review sufficiency determinations de novo, *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, and we must not weigh the evidence. *MacDonald* at ¶ 12. When the evidence is subject to more than one possible interpretation, we must adopt the interpretation consistent with the trial court's judgment. *In re J.C.*, 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶16} With respect to a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the burden of production, which concerns a party's duty to introduce *enough* evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 26. Therefore, in order for us to conclude that the

6

factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence—which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. *Id.*

**{¶17}** Mr. Kendrick emphasizes the paucity of evidence to establish that he caused Ms. Webb to believe that he would cause her serious physical harm, and insists that the trial court lost its way in rendering a verdict where, in his view, she lacked credibility. We disagree.

**{¶18}** The aggravated menacing statute, R.C. 2903.21, provides, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.21(A). And "R.C. 2901.01(A)(5)(d) defines serious physical harm to persons as any physical harm that involves some temporary, serious disfigurement." *State v. Wilson*, 8th Dist. Cuyahoga No. 111543, 2023-Ohio-218, ¶ 21. This court has "historically appl[ied] a liberal interpretation of 'serious physical harm' to persons." *Id.* at ¶ 22, quoting *State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 41.

**{¶19}** Evidence of the text messages and Ms. Webb's testimony at trial provided sufficient evidence that Mr. Kendrick threatened to harm her, her children, and/or her now-fiancé. Mr. Kendrick concedes that his messages that he would "end up doing something" and that he would take his pain out on the world could be construed as threats, but he maintains that these messages are too vague to constitute a threat of serious physical harm as contemplated by R.C. 2903.21(A). But again, this

7

court applies a liberal interpretation of "serious physical harm," *see* R.C. 2903.21(A), and in any event, his direct threat over the phone to shoot Ms. Webb or her family members certainly falls within this court's definition of a threat of "serious physical harm." Mr. Kendrick also argues that the state failed to prove that Ms. Webb experienced a subjective fear of such serious physical harm, but her testimony at trial demonstrates otherwise. Ms. Webb explained that she feared the serious physical harm that he might inflict, and that her fear was based on first-hand experiences with Mr. Kendrick's anger issues aggravated by his neglect of his bipolar disorder medication, knowledge of his ready access to firearms, and the escalating threats of violence. And it was within the trial court's discretion to credit Ms. Webb's testimony.

{¶20} Mr. Kendrick also attacks Ms. Webb's credibility, alleging that her testimony cannot be relied upon because of, in his words, her "frustration" with his refusal to cooperate with her efforts to transfer the title of the car they purchased together to her name alone as well as his threats to report her to the Hamilton County Department of Job and Family Services. He also emphasizes that he had never physically attacked her in the past. But the trial court sat in the best position to weigh the credibility of the witnesses, and the lawyers highlighted all of these matters to the court. And Ms. Webb's testimony was consistent and supported by the evidence introduced at trial. " 'When conflicting evidence is presented at trial, [an adjudication] is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *In re A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, ¶ 26, quoting *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29.

{¶21} In light of Ms. Webb's testimony, we conclude that a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt, *see MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, at ¶ 12, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717, and the trial court did not lose its way in reaching a guilty verdict and create "a manifest miscarriage of justice." *See State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168.

{¶22} Accordingly, we overrule Mr. Kendrick's second assignment of error.

IV.

{¶23} In his third and final assignment of error, Mr. Kendrick maintains that the trial court failed to award him the jail-time credit to which he was entitled. The state, for its part, agrees that the case should be remanded for a proper award of jail-time credit.

{¶24} Jail-time credit should be awarded for all time spent in confinement in connection with the offense for which the defendant was convicted and sentenced. *See State v. Ford*, 10th Dist. Franklin No. 07AP-803, 2008-Ohio-4373, ¶ 83. Pursuant to R.C. 2949.08(C)(1), jail-term sentences should be reduced "by the total number of days the person was confined for any reason arising out of the offense for which the person was convicted and sentenced * * *." R.C. 2949.08(B) further requires the record of the defendant's conviction to specify the total number of days, if any, that the defendant was confined for the offense prior to his or her conviction. Generally, we review a misdemeanor sentence for an abuse of discretion. *See State v. Barnes*, 1st Dist. Hamilton Nos. C-210345, C-210346, C-210347 and C-210348, 2022-Ohio-1738, ¶ 4 ("Ordinarily, an appellate court reviews misdemeanor sentencing for an abuse of

discretion."). "However, when a trial court does not comply with the applicable sentencing statutes, we apply a de novo standard of review." *Id.*

**{¶25}** The trial court was informed that Mr. Kendrick had served two days when he was arrested on the domestic violence charge that arose from the same set of facts that led to his conviction and sentence. However, the trial court failed to include jail-time credit in Mr. Kendrick's sentencing entry.

**{¶26}** We therefore sustain Mr. Kendrick's third assignment of error.

\*       \*       \*

**{¶27}** In light of the foregoing analysis, we sustain Mr. Kendrick's third assignment of error, reversing the trial court's judgment in part and remanding this cause for the limited purpose of ordering the award of jail-time credit. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**WINKLER** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.