[Cite as *State v. Thompson*, 2024-Ohio-3165.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-230656 |
| | | C-230657 |
| Plaintiff-Appellee, | : | TRIAL NOS. 23CRB-18751A |
| | | 23CRB-18752A |
| vs. | : | |
| CHRISTOPHER THOMPSON | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in C-230657; Affirmed in Part and Reversed in Part, and Cause Remanded in C-230656

Date of Judgment Entry on Appeal: August 21, 2024


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Victoria Gooder*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BOCK, Presiding Judge.**

**{¶1}** Defendant-appellant Christopher Thompson appeals his convictions for aggravated menacing and obstructing official business. He challenges his convictions on the weight and sufficiency of the evidence and additionally asserts that the trial court erred in sentencing him on the obstructing-official-business charge.

**{¶2}** Because testimony established that Thompson shouted at officers that he had a gun and to shoot him, which the trial court reasonably found to be an implied threat that he would use the gun against the officers in an apparent attempt to induce officers to shoot him, we hold that the State presented sufficient evidence to convict Thompson of aggravated menacing.

**{¶3}** We further hold that the State presented sufficient evidence to convict Thompson of obstructing official business where, after Thompson exited a building, he ignored a police officer's lawful order to stop and instead re-entered the building.

**{¶4}** Finally, we sustain Thompson's second assignment of error because the trial court sentenced Thompson beyond the authorized range on the obstructing-official-business conviction. We reverse Thompson's sentence and remand the cause to the trial court for resentencing on the obstructing-official-business conviction.

## I. FACTS AND PROCEDURE

### A. Facts

**{¶5}** In October 2023, Cincinnati police officers responded to a 911 call reporting a burglary in a home. The caller identified Thompson as the suspect and reported that Thompson was armed. Officers searched Thomson's information and determined that he had an active felony warrant for a probation violation.

{¶6} Officer Kerregan testified that he arrived at the home and met the 911 caller who told officers that her daughter was still in the home. Kerregan waited outside of the house for additional officers to arrive. Before the additional officers arrived, Thompson exited from a door at the side of the house. Kerregan noticed Thompson and told him to show his hands and to stop. Thompson turned around, walked back into the house, and slammed the door closed.

{¶7} Seconds later, officers heard screams coming from inside the home. As the officers were planning to force their way in, the 911 caller's daughter appeared in a side window of the house. Officers determined that she was unharmed.

{¶8} Thompson then opened a second-story window in the front of the home. Kerregan testified that Thompson looked at Kerregan and shouted, "I have a gun, shoot me, shoot me, I have a gun." On cross-examination, Kerregan testified that his body-worn camera footage captured Thompson saying, "I ain't got no gun." The trial court listened to the footage and found that a woman yelled, "[H]e doesn't have a gun, he doesn't have a gun," and that Thompson shouted in response, "[N]o, I have a gun. Shoot me, shoot me."

{¶9} Kerregan "got into a position of cover behind a pillar that was in front of the house." Kerregan testified that he took cover "in case [Thompson] did have a firearm. In case I were to take fire from him, I would at least have something to stop the bullets." Thompson's hands were hidden below the window, and while Kerregan did not see if Thompson had a weapon, the 911 call and Thompson's statements led Kerregan to believe that Thompson was armed. Kerregan believed that Thompson "was trying to commit suicide by cop. So I was fearing that if he did have a firearm, he was going to use it against me in order to get me to use my firearm against him."

3

**{¶10}** Kerregan told Thompson to show his hands, but Thompson refused. Four other officers forced their way into the house. The officers found Thompson in the upstairs room and saw that he did not have a gun. The officers arrested Thompson.

**{¶11}** The State charged Thompson with one count each of obstructing official business (R.C. 2921.31), possession of drugs (R.C. 2925.11), aggravated menacing (R.C. 2903.21(A), and resisting arrest (R.C. 2921.29). The possession charge was dismissed before trial.

## B. The trial court convicted Thompson of aggravated menacing and obstructing official business

**{¶12}** After the State rested, the trial court granted Thompson's Crim.R. 29 motion and acquitted him on the resisting-arrest charge, but it denied the portion of the motion seeking dismissal of the obstructing-official-business and aggravated-menacing charges. The trial court found Thompson guilty of obstructing official business and aggravated menacing.

**{¶13}** As to the obstructing-official-business charge, the trial court noted that Thompson had an outstanding felony warrant. It determined that when Thompson exited the house and Kerregan ordered him to show his hands and approach the officers, Thompson instead re-entered the house and slammed the door closed. The trial court found that this constituted obstructing official business.

**{¶14}** Regarding the aggravated-menacing charge, the trial court found that Thompson said he had a gun in direct response to the woman stating that Thompson did not have a weapon. The trial court determined that Thompson intended to convey a threat and that Kerregan believed Thompson would cause him serious physical harm, noting that Kerregan took cover behind a wall.

{¶15} On the aggravated-menacing charge, the trial court sentenced Thompson to 180 days in jail and credited him with 18 days for time served. On the obstructing-official-business charge, the trial court sentenced Thompson to 180 days with credit for 18 days, suspended the remaining 162 days, and placed Thompson on two years of community control. The trial court stayed both sentences pending appeal.

## II. LAW AND ANALYSIS

### 1. First assignment of error: weight and sufficiency

{¶16} In his first assignment of error, Thompson argues that his convictions were based on insufficient evidence and against the manifest weight of the evidence.

### Sufficiency of the evidence

### a. Standard of review

{¶17} A sufficiency-of-the-evidence challenge tests whether the State produced adequate evidence on each element of the offense. *State v. Wright*, 2024-Ohio-851, ¶ 25 (1st Dist.). Viewing the evidence in the light most favorable to the State, appellate courts ascertain whether reasonable fact finders could have determined that the State proved each element of the offense beyond a reasonable doubt. *State v. Kendrick*, 2023-Ohio-1763, ¶ 15 (1st Dist.). This court does not weigh the evidence and when faced with evidence subject to more than one possible interpretation, we adopt an interpretation of the evidence consistent with the trial court's judgment. *Id.*

### b. Aggravated menacing

{¶18} R.C. 2903.21, Ohio's aggravated-menacing statute, provides, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person." R.C. 2903.21(A). "A person acts knowingly, regardless of purpose, when the person is aware that the

5

person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The State must prove that the victim subjectively feared substantial physical harm. *State v. Landrum*, 2016-Ohio-5666, ¶ 9 (1st Dist.). That belief can be shown through circumstantial evidence. *Id.*

{¶19} "Serious physical harm" is defined as:

(a) Any . . . condition of such gravity as would normally require hospitalization . . . ;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(5).

{¶20} Sufficient evidence supports Thompson's conviction for aggravated menacing. Officer Kerregan testified that Thompson, after appearing in the upstairs window, looked directly at Kerregan and yelled, "I have a gun, shoot me, shoot me, I have a gun." Thompson yelled this while holding his hands below the window so that Kerregan could not see if Thompson had a weapon. Though someone did shout that Thompson did not have a weapon, the trial court found that Thompson stated, "[N]o, I have a gun. Shoot me, shoot me," in direct response to that statement. Kerregan

testified that he believed that Thompson was attempting to "commit suicide by cop" and Kerregan took cover behind a pillar to avoid being shot.

{¶21} Thompson argues that his statements were designed to cause the officers to shoot him rather than to make the officers think he would harm them. Thompson cites to cases in which this court has held that a defendant's possessing a holstered firearm was insufficient to support an aggravated-menacing charge where the defendant did not brandish or threaten to use the firearm. *See State v. Hamm*, 2020-Ohio-4691, ¶ 25 (1st Dist.). Thompson further suggests that "the subjective belief of harm to police is a potential threat in every suicide by cop scenario and one that should not be subject to prosecution."

{¶22} While it is true that possessing a firearm is not synonymous with threatening to use it, under the facts of this case, a reasonable fact finder could determine that Thompson knowingly caused Kerregan to believe that Thompson would attempt to shoot at him, risking serious physical harm. Thompson acknowledges that he was trying to cause the police to harm him. Thompson's implied threat to fire a gun to prompt Kerregan to shoot him was sufficient to support an aggravated-menacing charge. Finally, there is nothing in the aggravated-menacing statute that precludes a police officer from being the alleged victim in cases like Thompson's. There is no basis for reading this blanket exception into the statute. We accordingly hold that there is sufficient evidence to support Thompson's aggravated-menacing conviction.

c. **Obstructing official business**

{¶23} R.C. 2921.31(A) provides, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any

7

authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." To support a conviction for obstructing official business, the State must prove beyond a reasonable doubt that the defendant "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.). A person acts purposely when the person intends to cause a specific result. R.C. 2901.22(A).

{¶24} Not every delay or inconvenience to a police officer constitutes a violation of the obstructing-official-business statute. *State v. Harris*, 2023-Ohio-4387, ¶ 22 (1st Dist.). Instead, the statute prohibits only affirmative acts that create a "substantial stoppage" of a police officer's official business. *Id.* at ¶ 23. "A 'substantial stoppage' is not a set period of time; rather the defendant's act must 'actually hamper or impede' the officer's performance of official duties." *Id.*

{¶25} If an officer may lawfully detain an individual, and the individual is aware the officer is attempting to detain the individual, the individual may not walk away from the officer without violating the obstructing-official-business statute. *Id.*, citing *State v. Easterling*, 2019-Ohio-2470, ¶ 37 (2d Dist.). Several courts have held that a defendant's retreating into a home after being ordered not to move constitutes obstructing official business. *See Easterling* at ¶ 40 ("Easterling did not merely refuse to cooperate; he engaged in the affirmative conduct of disobeying the officer's order to stop and not return to the house, entering his home, and pushing against the door to prevent the officers from apprehending him."); *see State v. Harris*, 2015-Ohio-5378,

¶ 8 (9th Dist.) ("Mr. Harris's retreat into his house after being ordered . . . to put his hands on top of his head and to talk with him constituted an overt act that was sufficient to support his conviction for obstructing official business."); *State v. Shoe*, 2018-Ohio-3006, ¶ 21 (3d Dist.) ("Shoe's repeated trips into his residence and away from Officer Calvert's investigation, which had the effect of delaying Officer Calvert from finding out Shoe's identity, also constitute an affirmative act.").

{¶26} The trial court convicted Thompson of obstructing official business because Thompson went back into the house after he had stepped outside and Kerregan ordered him to stop. Though Thompson argued at trial that he was not fully out of the house, the trial court found that Thompson had completely exited from the house and walked down the exterior stairs. Officers knew that Thompson had an outstanding felony warrant and could lawfully arrest him when he was outside of the house. *See State v. Smith*, 2005-Ohio-2560, ¶ 39 (10th Dist.). Re-entering the house was an affirmative act that delayed the officer's ability to serve the warrant. Officers did not manage to arrest Thompson until well after he re-entered the house, establishing a substantial stoppage.

{¶27} Thompson argues that he did not act purposely to obstruct the police as the police never announced that he was under arrest. But in *Harris*, there was sufficient evidence of obstruction where, despite the officers never stating that Harris was under arrest, he "came partially out" of his apartment, refused to comply with officers' orders to put his hands on his head and step outside to talk, and instead re-entered his home. *Harris* at ¶ 3, 8. Moreover, this court has held that flight from a stop to ensure officer safety can constitute obstructing official business. *See State v. Lohaus*, 2003-Ohio-777, ¶ 12 (1st Dist.). There is no requirement under the

9

obstructing-official-business statute for the State to show that a defendant was under arrest, provided the officer can lawfully detain the person.

{¶28} Here, although Kerregan never specifically stated that Thompson was under arrest, Kerregan, with his gun drawn and pointed at Thompson, instructed Thompson to stop and to show his hands. Under these facts, a reasonable fact finder could infer that Thompson acted purposely to obstruct the officers.

{¶29} We hold that the State produced evidence sufficient to support Thompson's convictions.

## Manifest weight

### a. Standard of review

{¶30} A manifest-weight-of-the-evidence challenge argues that the State failed to carry its burden of persuasion at trial. *Kendrick*, 2023-Ohio-1763, at ¶ 16 (1st Dist.). An appellate court sits "as a 'thirteenth juror'" and must "independently 'review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.'" *State v. Kizilkaya*, 2023-Ohio-3989, ¶ 15 (1st Dist.), quoting *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.). Reversal under this standard is reserved for "exceptional cases[]"where the evidence heavily weighed against conviction. *State v. Nicholson*, 2024-Ohio-604, ¶ 71.

### b. Aggravated menacing

{¶31} Having reviewed the record, we hold that Thompson's aggravated-menacing conviction is not against the weight of the evidence. The main issues in the case are (1) whether Thompson stated that he had a gun, and (2) whether his statement, "I have a gun, shoot me," is a threat of serious physical harm. Officer

Kerregan on cross-examination agreed that Thompson did state, "I ain't got no gun." But the trial court, after listing to the body-worn camera footage, found that an unidentified woman said that Thompson was unarmed, and Thompson responded that he was armed. Having independently reviewed the evidence, we cannot say that the trial court's interpretation of the video is incorrect. Finally, the trial court's finding that Thompson's statement knowingly communicated a threat of serious physical harm was reasonable because Thompson's attempt to cause the police to shoot him carried an implication that he would use a gun against the police.

### c. Obstructing official business

{¶32} Likewise, Thompson's obstructing-official-business conviction is not against the weight of the evidence. The video shows Thompson exiting from the house. He saw uniformed officers with their guns drawn. The officers told Thompson to show his hands and to "step out here." Thompson quickly returned into the house and slammed the door closed. The trial court did not lose its way in convicting Thompson of obstructing official business.

{¶33} We overrule Thompson's first assignment of error.

## 2. Second assignment of error: Thompson's sentence

{¶34} In his second assignment of error, Thompson argues that the trial court erred in sentencing him to 180 days in jail, with 18 days of credit and 162 days suspended, for the obstructing-official-business conviction when the maximum authorized sentence was 90 days. The State concedes the error.

{¶35} An appellate court may "increase, reduce, or otherwise modify a sentence . . . or may vacate the sentence and remand the matter to the sentencing court for sentencing" if the sentence is "contrary to law." R.C. 2953.08(G)(2)(b).

{¶36} The trial court convicted Thompson of obstructing official business under R.C. 2921.31, a second-degree misdemeanor under these circumstances. R.C. 2921.31(B). The maximum authorized sentence for a second-degree misdemeanor is 90 days. *See* R.C. 2929.24(A)(2). The trial court erred in sentencing Thompson to 180 days, with credit for 18 days and 162 days suspended, as that term exceeds the maximum sentence authorized by law. We sustain Thompson's second assignment of error, reverse Thompson's sentence for the obstructing-official-business conviction, and remand the case to the trial court for resentencing on that conviction.

### III.   CONCLUSION

{¶37} We sustain Thompson's second assignment of error, reverse his sentence on the obstructing-official-business conviction, and remand the cause for resentencing on that conviction. We affirm the remainder of the trial court's judgment.

Judgment accordingly.

**CROUSE** and **KINSELY, JJ.,** concur**.**

Please note:

The court has recorded its entry on the date of the release of this opinion.