[Cite as *State v. Walker*, 2025-Ohio-2982.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                      :        APPEAL NO.   C-240551
                                             TRIAL NO.    24/CRB/7023
     Plaintiff-Appellee,       :

  vs.                               :
                                             *JUDGMENT ENTRY*
NATHANIEL WALKER,                   :

     Defendant-Appellant.      :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 8/20/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *State v. Walker*, 2025-Ohio-2982.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240551 |
| | | TRIAL NO. | 24/CRB/7023 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| NATHANIEL WALKER, | : | | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 20, 2025


*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Defendant-appellant Nathaniel Walker was convicted after a bench trial of obstructing official business. The charges against Walker were filed after he led two police officers, who were trying to tell him to leave his ex-girlfriend alone and serve a warrant, on a chase through, out of, and around her apartment building. Walker now appeals, claiming that the State failed to prove (1) he knew the individuals from whom he was fleeing were police, and (2) the chase constituted a substantial stoppage of official business. For the reasons set forth below, we hold that the trial court did not err in finding him guilty, and so we affirm Walker's conviction.

## I. BACKGROUND

{¶2} One night in April 2024, Cincinnati Police received a call from a woman about her ex-boyfriend, who she said had twice knocked on her door that evening and would not leave her alone. Officer DeKwan Steele and his partner were dispatched to her apartment. After the officers arrived, the woman gave them a description of her ex-boyfriend, whom she identified as Walker. The woman further informed the officers that Walker had texted her he would be coming by again.

{¶3} The officers waited outside of her apartment building for Walker to return. According to Officer Steele, the officers intended only to tell Walker to leave the woman alone and cite him for an outstanding warrant, which had appeared when the officers had run Walker's name.

{¶4} Footage from Officer Steele's body-worn camera ("BWC"), entered into evidence at trial, shows Steele and his partner hiding behind a shrubbery outside the building when Walker arrived. As Walker entered the apartment building, Steele ran in after him. Steele ran up the steps and rounded the corner into the woman's hallway, where he saw Walker in front of the woman's door. At trial, Officer Steele claimed that

3

the two had "met eyes as [Steele was] coming up the stairs," but that the moment was "pretty quick." Steele and his partner were wearing their police uniforms.

{¶5} After that fleeting glance, Walker took off running down the hall just as Officer Steele shouted, "Hey! Hey—stop! Don't you run!" The officers gave chase, pursuing Walker down four flights of stairs, out a door, through the parking lot, and around the side of the apartment building. As they did so, Steele twice yelled, "Stop," but the officers never identified themselves as police. Walker hopped a waist-high fence at the back of the building and Steele jumped the fence after him. After jumping the fence, Steele encountered Walker, who was seated on the ground. What appear to be additional police vehicles are visible on the BWC video ahead of and to the left of where Walker is seated.

{¶6} The chase lasted approximately 40 seconds from the moment Walker ran to the moment Officer Steele found Walker sitting on the ground.

{¶7} Steele continued to yell, in rapid sequence, "Stop! Put your hands behind your back now! Roll over! Do it! Hands behind your back! Shut up!" as Walker put his hands in the air and attempted to comply. By this point, the video clearly shows other police officers nearby as well. As Walker was being cuffed, his face to the ground, he asked, "What did I do?" Steele told him to "shut up" once again. Walker reiterated this question several times before the officers told him that he had warrants out for his arrest, a fact which seemed to surprise and confuse Walker. The officers also accused Walker of "kicking down" his girlfriend's door, but quickly walked this back, saying instead that he had been "harassing" her.

{¶8} The next day, Walker was charged with obstructing official business in violation of R.C. 2921.13(A), a second-degree misdemeanor, in the Hamilton County Municipal Court. The complaint, which was sworn to by Officer Steele, stated that

4

"arrestee saw police was told to stop due to having felony warrants."

**{¶9}** Walker pled not guilty, and his case was tried to the bench. The only witness was Officer Steele; the only other evidence was the recording from Officer Steele's BWC. The trial court found Walker guilty of obstructing official business and sentenced him to 90 days in jail, crediting him for one day of time served, suspending the remaining 89 in favor of 11 months' community control, and staying execution pending appeal. This appeal timely followed.

## II. ANALYSIS

**{¶10}** In his sole assignment of error, Walker contends that his conviction under R.C. 2921.31(A) was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶11}** A challenge to the sufficiency of the evidence is, in essence, an allegation that the State failed to meet its burden of production. *See State v. Messenger*, 2022-Ohio-4562, ¶ 26; *In re S/F Children*, 2025-Ohio-822, ¶ 37 (1st Dist.). It asks whether the State's evidence, if believed and taken in the light most favorable to the State, could have satisfied all the elements the State needed to prove to secure a conviction. *See State v. Jones*, 2021-Ohio-3311, ¶ 16.

**{¶12}** Manifest-weight challenges, by contrast, are meant to ensure that the State has met its burden of persuasion. *See Messenger* at ¶ 26; *In re S/F Children* at ¶ 38. In considering a manifest-weight challenge, a reviewing court must review the record itself, then weigh the evidence and all reasonable inferences to ensure that the factfinder—whether judge or jury—did not "clearly los[e] its way" in finding guilt beyond a reasonable doubt and thereby "create[] such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *accord State v. Thompkins*, 1997-Ohio-52, ¶ 25. To

do this, we must necessarily make credibility assessments, where such assessments may be made from the cold record. *See Thompkins* at ¶ 25. However, because the factfinder had the opportunity to observe the witnesses firsthand, we defer to their determinations of credibility (or lack thereof), unless controverted by hard evidence in the record. *See State v. Railey*, 2012-Ohio-4233, ¶ 14 (1st Dist.).

**{¶13}** Walker was convicted for obstructing official business under R.C. 2921.31(A), which provides,

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Under this statute, the State must prove four essential elements: (1) that the defendant engaged in an *affirmative act*, (2) that the defendant was *not privileged* so to act, (3) that the defendant acted with the *purpose to prevent, obstruct, or delay* the performance of an authorized act of a public official within their duties, and (4) that the defendant's act *did, in fact, hamper or impede a public official* in the performance of their duties. *See In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.); *State v. Coffman*, 2024-Ohio-1182, ¶ 13 (1st Dist.).

**{¶14}** Walker only contests prongs three and four in this appeal.

### A. *"Purpose to Prevent, Obstruct, or Delay"*

**{¶15}** Walker first argues that the trial court's determination that he acted with a "purpose to prevent, obstruct, or delay" the officers in performing their duties was based on insufficient evidence and was against the manifest weight of the evidence.

**{¶16}** To prove the element of "purpose," the State must prove not merely that the defendant intended to engage in the charged obstructive conduct, but that the defendant did so with the "specific intention to cause a certain result." R.C. 2901.22(A). *See State v. Thompson*, 2024-Ohio-3165, ¶ 23 (1st Dist.) (noting that, in context of R.C. 2921.31(A), "[a] person acts purposely when the person intends to cause a specific result"); *State v. Harris*, 2023-Ohio-4387, ¶ 26 (1st Dist.) (upholding obstructing-official-business conviction because "a reasonable factfinder could infer that Harris *specifically intended* to avoid the ticket by walking and then running away" (Emphasis added.)). R.C. 2921.31(A) does not prohibit all intentional conduct that happens to impede or hamper official business, but only that subset done "with purpose to prevent, obstruct, or delay." Such obstructive purpose will often have to be inferred from the defendant's actions, viewed in light of the circumstances under which they were taken, the information available when he took them, and the actions he took subsequently. *See In re Payne*, 2005-Ohio-4849, at ¶ 15 (1st Dist.); *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus.

**{¶17}** When a defendant's allegedly obstructive act is fleeing from the police, our cases suggest that proof of a defendant's knowledge that an officer is attempting to detain them, plus the willful choice to run away, can be sufficient to prove a "purpose to prevent, obstruct, or delay" the officer. *See*, *e.g.*, *Thompson* at ¶ 25 ("If an officer may lawfully detain an individual, and the individual is aware the officer is attempting to detain the individual, the individual may not walk away from the officer without violating the obstructing-official-business statute."); *Harris* at ¶ 26; *State v. Lohaus*, 2003-Ohio-777, ¶ 10 (1st Dist.). In *Coffman*, for example, we held that a reasonable factfinder could infer a purpose to obstruct under R.C. 2921.31(A) from evidence that the defendant had known the "officer was conducting an investigative stop" but

7

nevertheless "cho[se] to run from the officer," disregarding the officer's demands he stop and submit to questioning. *Coffman*, 2024-Ohio-1182, at ¶ 19 (1st Dist.).

**{¶18}** In this case, Walker argues that the State failed to prove that he had a purpose to prevent, obstruct, or delay officers' official business, because the State proved neither (1) that he knew the individuals chasing him were police officers, nor (2) that they were engaged in official business. To support this argument, Walker points out that the officers never identified themselves as police officers during the chase—instead shouting combinations of, "Hey," "Stop," and "Don't you run." Further, Walker points to Officer Steele's testimony that, following his arrest, Walker said "he didn't know it was police" and had "thought it was somebody else" chasing him. Walker also points to his own apparent confusion about why he was being arrested.

**{¶19}** The trial court, however, concluded that the circumstantial evidence showed that Walker had been aware that the men pursuing him were officers. The court noted that "everywhere in that body-worn camera is well lit," that it could "hear the officers, everything jangling on them as they're running" and could "hear their shoes clip clopping down" the stairs in pursuit. Further, Officer Steele testified that he was in uniform at the time, and that he and Walker had "met eyes as [Steele was] coming up the stairs."

**{¶20}** The State's evidence was sufficient to prove Walker's "purpose to prevent, obstruct or delay the performance by a public official of any authorized act." R.C. 2921.31(A). The testimony at trial, supplemented by the BWC video, showed that Walker met the eyes of a uniformed police officer in a well-lit hallway and then fled while the officer issued straightforward commands. This evidence clearly met the State's burden to produce evidence from which a rational factfinder could conclude that Walker chose to flee from officers, whom he knew sought to detain him. *See*

8

*Coffman*, 2024-Ohio-1182, at ¶ 19 (1st Dist.); *Thompson*, 2024-Ohio-3165, at ¶ 28 (1st Dist.); *see also State v. Friedman*, 2013-Ohio-4669, ¶ 24 (5th Dist.) (holding that defendant's "persistence in disregarding the orders of the police to leave the home was sufficient evidence from which a rational trier of fact could conclude that she acted with the specific intent to prevent, obstruct, or delay [the officers] in their lawful duties"). And even if Walker was unaware of the warrant for his arrest or why the officer had commanded him to stop, the uniformed Officer Steele's obvious commands sufficiently supported the inference that Walker would have known Steele was performing his lawful police duties.

**{¶21}** Further, the minimal evidence pointing the other direction does not suggest that the trial court lost its way in determining whether the State satisfied its burden of persuasion. Walker points to (1) his statement, reported by Officer Steele, that he did not know the men following him were police officers, and (2) his decision to sit on the ground and comply with the officers after jumping the fence. But, given the lighting in the hall, the officers' uniforms, and the testimony that Walker and Steele "met eyes," we cannot say that the trial court, as finder of fact, lost its way in disbelieving Walker's post-arrest statements. And Officer Steele's BWC footage suggests that Walker stopped running when additional police officers and vehicles came into view. Perhaps Walker sat down because the sight of these new officers made him realize the men chasing him were police. Or perhaps he sat down because he realized he had nowhere left to run. We cannot say, in light of the circumstantial evidence regarding the initial glance, that the trial court lost its way in reaching the latter conclusion.

**{¶22}** The State's evidence was sufficient to sustain a finding that Walker had a "purpose to prevent, obstruct, or delay the performance by a public official of any

authorized act within the public official's official capacity," because it supported the conclusion that Walker fled despite knowing the men chasing him were police engaged in official business. Further, we cannot say that, on the facts presented here, the trial court lost its way in concluding that Walker's ultimate acquiescence and post-arrest statements did not necessitate a different finding.

### B. *"Hampers or Impedes"*

**{¶23}** Walker next contends that the evidence did not show that he hampered or impeded the officers.

**{¶24}** Even where a defendant intends to obstruct or delay the authorized actions of a public official, their conduct violates R.C. 2921.31(A) only if it actually "hampers or impedes" the official. Conduct must cause more than a "de minim[i]s" delay or bother before it will be said to "hamper[] or impede[]" an officer. *See In re R.B.*, 2021-Ohio-3749, ¶ 23 (1st Dist.). Rather, "there must be some substantial stoppage of the officer's progress before one can say he was hampered or impeded." *State v. Stephens*, 57 Ohio App.2d 229, 230 (1st Dist. 1978); *accord Coffman*, 2024-Ohio-1182, at ¶ 22 (1st Dist.). While the line between a de minimis interference and action that truly hampers or impedes is not strictly a question of duration, *In re R.B.* at ¶ 19, length of delay can be a "relevant factor" in determining whether officers were truly hampered or impeded. *See Coffman* at ¶ 28, citing *State v. Grice*, 2009-Ohio-372, ¶ 12 (1st Dist.).

**{¶25}** Walker argues that the facts of his case are much like those in *Coffman*, 2024-Ohio-1182, ¶ 29 (1st Dist.), where we held that a brief chase did not hamper or impede the officers seeking to speak with the defendant. In *Coffman*, officers investigating a breaking and entering spied the defendant, whom they believed matched the description of their suspect, pushing a lawnmower down the street. *Id.* at

¶ 3. When the officers told the defendant to come speak to them, the defendant fled, leading the officers on a 20-second chase across flat terrain, which ended when one of the officers tased the defendant. *Id.* at ¶ 4. The trial court found the defendant guilty of obstructing official business, despite stating that it found "no substantial stoppage." *Id.* at ¶ 24. We reversed the conviction because we agreed that the defendant's "brief flight" constituted only "a de minimis interference," rather than a "substantial stoppage" that hampered or impeded the officers' ongoing breaking-and-entering investigation. *Id.* at ¶ 29.

{¶26} In Walker's case, however, Officer Steele's testimony revealed that the officers' business involved waiting for and speaking with one person: Walker. The officers intended to tell Walker to stop coming around his ex-girlfriend's home and to cite him based on a prior warrant. In between the officers and those goals, Walker interposed a chase that took them through an apartment hallway, down multiple flights of stairs, around a building, and over a fence. Though brief in duration—the chase took about 40 seconds—the trial court could permissibly conclude that Walker's flight was more than a de minimis annoyance or delay; it created a substantial stoppage that hampered or impeded the officers in completing their tasks. *Compare Lohaus*, 2003-Ohio-777, at ¶ 12 (1st Dist.) (holding defendant's "actions in fleeing across several lawns after being told to stop—and in forcing the investigating officer to physically restrain him—fell squarely within the statute's proscriptions").

{¶27} The State thus presented sufficient evidence to show that Walker's flight hampered or impeded the officers. And because the underlying facts regarding the officers' objectives and the events of the chase were not in dispute, we cannot say that the trial court's finding on this element was against the manifest weight of the evidence.

### III. CONCLUSION

**{¶28}** The trial court, based upon the BWC video and officer testimony, found that Walker took off running from the officers with the purpose to prevent, obstruct, or delay them as they sought to detain him. It further found that flight hampered or impeded the officers in the performance of their duties. These findings were based on sufficient evidence, and Walker has not shown that the manifest weight of the evidence cut in the other direction. We therefore overrule Walker's sole assignment of error and affirm the trial court's judgment of conviction.

Judgment affirmed.

**NESTOR** and **MOORE, JJ.,** concur.