[Cite as *State v. Chambers*, 2025-Ohio-4737.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240578 |
| | | TRIAL NOS. 24/CRB/9650/B/C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| JAYLIN CHAMBERS, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/15/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Chambers*, 2025-Ohio-4737.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240578 |
| | | TRIAL NOS. 24/CRB/9650/B/C |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| JAYLIN CHAMBERS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: October 15, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Phoebe Cates*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Police responded to a domestic-violence call involving defendant-appellant Jaylin Chambers and an alleged victim, D.K. While the officers attempted to investigate the call, Chambers refused to take a seat and began shouting at and over officers, hurling curses both at them and D.K. When officers sought to restrain him, he fought. He now challenges the sufficiency of the evidence supporting his convictions for obstructing official business and resisting arrest.

{¶2} We hold that the State's evidence was legally sufficient to support the trial court's findings underlying Chambers's convictions for obstructing official business under R.C. 2921.31 and for resisting arrest under R.C. 2921.33. Accordingly, we affirm.

## I. BACKGROUND

### A. Arrest

{¶3} In June 2024, Cincinnati Police Officers Corey Bender and Zach Mitchell responded to a domestic-violence call. Upon arrival, the officers encountered D.K. and Chambers, the alleged perpetrator of the domestic-violence incident. Chambers was apparently "sitting in the grass area next to the apartment complex" acting "pretty upset." The officers decided to split the two up and speak with them separately. Officer Bender spoke with Chambers, and Officer Mitchell spoke with D.K. Officer Bender testified that Chambers was cooperative during this period.

{¶4} Officer Bender testified that, because he wished neither to handcuff Chambers nor to place him in the police vehicle, he asked Chambers to sit on the sidewalk near the car. Chambers, however, refused to take a seat on the curb. As the encounter went on, Chambers "became more and more upset" and began to protest "that he wasn't going to jail." Officer Bender speculated that Chambers's agitation may

have increased because D.K., who had been pulled to the side, "came into sight" around this time.

{¶5} The events from this point forward were captured on video recorded by officers' body-worn cameras ("BWCs"), which the State played at trial. The video shows Chambers protesting after being asked to sit down and asserting that he won't go to jail. Chambers then begins to shout and curse at D.K., who is somewhere off-camera, behind Officer Mitchell. Officer Mitchell takes a few steps toward Chambers. As he does so, Chambers walks backwards, keeping a roughly consistent space between himself and the officers, shouting and gesticulating all the while.

{¶6} Then Chambers changes direction. He takes a couple of steps in Officer Mitchell's direction, but slightly to the officer's side, as he continues to look and yell at D.K. off-camera. As Chambers comes even with Officer Mitchell, Mitchell grabs both his arms. Chambers's voice rises as he attempts to pull free, shouting, "Nah, I ain't goin' to no—cuz—bruh! What you doin', bruh? Man—what y'all doin', bruh?"

{¶7} Within seconds, Officer Mitchell wrestles a still-writhing, still-shouting Chambers to the grass, and Officer Bender joins Officer Mitchell in restraining Chambers's limbs against the ground. Officer Bender then turns Chambers onto his stomach to put handcuffs on him, while Officer Mitchell rises to interpose himself between D.K., who has run over to protest the officers' sudden use of physical force to subdue Chambers, and the pair still struggling on the ground. Eventually, Chambers is handcuffed and taken to the police cruiser. At no point during the recorded encounter do the officers tell Chambers he is under arrest.

## B. Trial

{¶8} Later that day, Officers Bender and Mitchell filed three complaints against Chambers in the Hamilton County Municipal Court. The first complaint

("Count A") charged Chambers with domestic violence under R.C. 2919.25, a first-degree misdemeanor. The second ("Count B") charged him with obstructing official business ("OOB") in violation of R.C. 2921.31, a second-degree misdemeanor. And the third ("Count C") charged Chambers with resisting a lawful arrest by force, in violation of R.C. 2921.33, another second-degree misdemeanor.

{¶9} Chambers maintained his not-guilty plea on all three counts. Count A was dismissed for want of prosecution. Counts B and C proceeded to a bench trial.

{¶10} The evidence at trial consisted of the BWC footage and the testimony of Officers Bender and Mitchell. The officers testified that they had not intended to take Chambers into custody when they first arrived and asked him to sit on the sidewalk. Officer Bender testified he had later sought to handcuff and detain Chambers because of his aggressive shouting and noncompliance:

> He wasn't listening. He was yelling over the top of my partner and I who were trying to calm him down. He was more worried about yelling at the victim.

> And his statements and the way he was conducting himself, at that point in time I made the decision, my partner and I, to put him into handcuffs so we could actually further investigate what we were there to do.

Officer Bender explained that even then, he was only "trying to speak to [Chambers] and place him into handcuffs just to detain him." It was only when Chambers "began pulling away" that "he was . . . under arrest."

{¶11} Officer Mitchell testified that he had intended to place Chambers in cuffs when he started "making physical evasive movement," i.e., when Mitchell saw Chambers "backing up" and "flailing his arms stating he wasn't going to jail." At that

5

point, Mitchell said, the officers "went to detain him based off of those movements and he resisted immediately," including by "instantly pull[ing] his left arm away from" Officer Mitchell's grasp. This resistance, Mitchell said, "requir[ed] [the officers] to place him on the ground for a better handcuffing position."

{¶12} Both officers acknowledged that they never told Chambers he was under arrest. Indeed, Officer Bender testified that he had "repeatedly" told Chambers, prior to the incident, "that he [was] not under arrest" and that he was "not going to place him in cuffs." According to Bender, once Chambers pulled away and the officers decided to arrest him, they "didn't have time to tell [Chambers] that he was under arrest because [they] were fighting with him." Bender testified that Chambers was ultimately "arrested for obstruction and resisting."

{¶13} During both his motion for acquittal and closing argument, Chambers argued that, on the OOB charge, any obstruction that might have resulted from Chambers's actions did not cause the "substantial stoppage" necessary to convict. And on the resisting count, Chambers contended that the officers had lacked probable cause to arrest him, and that he hadn't known he was under arrest—in part because officers had "repeatedly told" him he wasn't. In rebuttal, the State reiterated that Chambers had been loud and obnoxious, had refused to cooperate, and had moved away from officers, which had led to his arrest for OOB and subsequent resistance to that arrest.

{¶14} Ultimately, the trial court said that it "saw some affirmative acts of refusing to sit down and backing away coupled with I am not going to jail, cursing, combative." It therefore found Chambers "[g]uilty on the obstruction," and "[g]uilty on the refusing [sic] because it was a lawful arrest." The trial court sentenced Chambers to two days' incarceration, but credited Chambers for the two nights he'd

already spent in jail. This appeal timely followed.

## II. MOOTNESS

{¶15} In its brief, the State contends that Chambers's appeal is moot. In general, a misdemeanor appeal becomes moot only if the defendant (1) has voluntarily served their full sentence and (2) cannot show that they suffer any lingering collateral disabilities or loss of civil rights from their conviction. *See State v. Coffman*, 2024-Ohio-1182, ¶ 8 (1st Dist.), citing *State v. Ekouevi*, 2023-Ohio-703, ¶ 4 (1st Dist.).

{¶16} An appellant generally shows that their sentence was not served voluntarily by pointing to their request for a stay of that sentence. *See Cleveland Hts. v. Lewis*, 2011-Ohio-2673, ¶ 23. However, in *Coffman* we held that a misdemeanant who is sentenced only to the time he involuntarily served *prior to trial* need not seek a stay to preserve his right of appeal. *Coffman* at ¶ 9-10. We explained that "by the time the trial court sentenced [such a defendant], he ha[s] already involuntarily served his entire sentence," so no further proof of involuntariness is needed. *Id.* at ¶ 9.

{¶17} Here, Chambers spent two days in jail prior to trial, was convicted, and was sentenced to the two days he had already served. Like Coffman, Chambers thus "served his [two]-day sentence involuntarily," so "his appeal is not moot." *Id.* at ¶ 10.

## III. SUFFICIENCY CHALLENGES

{¶18} Chambers's two assignments of error challenge the sufficiency of the evidence supporting his convictions for OOB and resisting arrest, respectively. A challenge to the sufficiency of the evidence is, in essence, an allegation that the State failed to meet its burden of production. *See State v. Messenger*, 2022-Ohio-4562, ¶ 26; *State v. Walker*, 2025-Ohio-2982, ¶ 11 (1st Dist.). To resolve such a challenge, we ask whether the State's evidence, if believed and taken in the light most favorable to the State, could have satisfied all the elements the State had to prove to secure a

conviction. *See State v. Jones*, 2021-Ohio-3311, ¶ 16; *Walker* at ¶ 11.

### A. Obstructing Official Business

{¶19} In his first assignment of error, Chambers contends that the State's evidence was insufficient to convict him of OOB under R.C. 2921.31(A), which provides as follows:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶20} This court has previously explained that, to convict a defendant under this statute, the State must show and the trier of fact must find (1) that the defendant performed an *affirmative act*, (2) that the defendant was *not privileged* so to act, (3) that the defendant acted with a *purpose to prevent, obstruct, or delay* a public official in performing an authorized act within their duties, and (4) that the defendant's alleged action ultimately *hampered or impeded a public official* in performing their duties. *See Walker* at ¶ 13, citing *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.). Because Chambers's arguments do not address privilege, neither do we.

#### 1. Affirmative Act & Obstructive Purpose

##### a.

{¶21} The first element of OOB requires the State prove the defendant engaged in some "affirmative act." We have held that an affirmative act must be something more than a "defendant's refusal to comply with a police officer's order." *Coffman*, 2024-Ohio-1182, at ¶ 15 (1st Dist.). Rather, "the proper focus in a prosecution for obstructing official business is on the total course of the defendant's

*conduct*, verbal and physical." (Emphasis added.) *State v. Buttram*, 2020-Ohio-2709, ¶ 12 (1st Dist.), citing *State v. Wellman*, 2007-Ohio-2953, ¶ 12 (1st Dist.).

**{¶22}** The third element of OOB requires the State to prove that these affirmative acts were undertaken with the purpose to prevent, obstruct, or delay public officials in the execution of their duties. The State must prove "not merely that the defendant intended to engage in the charged obstructive conduct, but that the defendant did so with the 'specific intention to cause a certain result,'" i.e., obstruction or delay of an official performing their duties. *Walker*, 2025-Ohio-2982, at ¶ 16 (1st Dist.), quoting R.C. 2901.22(A).

**{¶23}** As the State correctly points out, we generally assess an OOB conviction by considering "'the totality of the defendant's conduct,'" rather than viewing each act in total isolation. *See State v. Hammock*, 2024-Ohio-2149, ¶ 17 (1st Dist.), quoting *State v. Easterling*, 2019-Ohio-2470, ¶ 35 (2d Dist.). However, this totality analysis cannot be used to criminalize conduct undertaken without the requisite "purpose to prevent, obstruct, or delay."

**{¶24}** In this case, the State points to numerous alleged affirmative acts, describing how Chambers "[1] backed away, [2] flailed his arms, [3] told officers that he was not going to jail, [4] gave pre-flight indicators, [5] yelled over the police officers, [6] stepped in the direction of [D.K.], and [7] cursed." Although this list includes both verbal and nonverbal conduct, the crux of the State's obstruction argument is that "the totality of the circumstances established Defendant *yelling over the officers* and *cursing* hampered and obstructed the officers in their ability to conduct their investigation." In other words, the "affirmative acts" that the State claims obstructed the officers' performance of their duties all involved forms of *speech*. Whether and how we can consider these verbal acts under the OOB statute raises unique questions.

9

b.

**{¶25}** Chambers argues that his "words are shielded from prosecution by the First Amendment to the U.S. Constitution."[1] That amendment, enforceable against Ohio by virtue of the Fourteenth, prohibits the State from "abridging the freedom of speech." U.S. Const., amend. I. Thus, Chambers contends, his aggravated shouts and curses cannot be affirmative acts proscribed by the OOB statute.

**{¶26}** We disagree. For at least the past 30 years, this and other Ohio courts have rejected an interpretation of R.C. 2921.31(A) that categorically excludes speech. *See State v. Lazzaro*, 1996-Ohio-397, ¶ 23 (allowing OOB prosecution for making false statements to investigating officer); *State v. Jeter*, 2005-Ohio-1872, ¶ 15 (1st Dist.) (allowing OOB prosecution for making statements that identified undercover police officer to suspect). But just because speech can be an affirmative act under the OOB statute, doesn't mean the First Amendment has no role to play.

**{¶27}** As we have recognized, "we must be extremely careful when punishing mere words" under the OOB statute. *Jeter* at ¶ 15. The United States Supreme Court has subjected obstruction statutes to searching First Amendment scrutiny in the past. In *Houston v. Hill*, 482 U.S. 451, 461 (1987), the Court struck down a law-enforcement-obstruction ordinance that applied to speech, partly because "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," even while the officers are engaged in their duties. And in *Lewis v.*

---

[1] We note that this constitutional argument was not raised before the trial court. The complaint did not allege that Chambers's OOB charge was based on his speech but rather stated that the charge was based on "[t]he defendant walking away from officers while officers gave multiple commands to stop." Much of the State's case thus focused on the defendant's decision to walk away and his refusal to sit down. Ultimately, the court below found Chambers guilty in part due to his speech. We are unsure of whether Chambers had an opportunity to address this issue below. The state has not argued waiver and, in fact, substantively addressed Chambers's First Amendment argument in its brief. Because waiver in this case is questionable and raises a complex issue not addressed by the parties, we take the parties' lead and address the First Amendment argument.